THE STATE, EX REL. BURTON, PROS. ATTY., *v.* GREATER PORTSMOUTH GROWTH CORP.

[Cite as State, ex rel. Burton, Pros. Atty., v. Greater Portsmouth Growth Corp., 7 Ohio St. 2d 34.]

(No. 40139—Decided June 22, 1966.)

*Mr. Everett Burton, Jr.*, prosecuting attorney, for relator. *Mr. William B. Saxbe*, attorney general, *Mr. Larry H. Snyder* and *Mr. Edward V. Leach, Jr.*, for respondent.

*Per Curiam.* Relator raises several questions in this action. His basic contention is that this amendment is invalid because it was not properly submitted to the voters.

He argues first that Section 13, Article VIII, contains more than one amendment within the meaning of Section 1, Article XVI of the Constitution of Ohio, which requires that amendments be submitted separately.

Section 1, Article XVI, reads in part as follows:

"When more than one amendment shall be submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment, separately."

It is relator's contention that inasmuch as this amendment affects the provisions of several other sections of the Constitution which prohibit the loaning of money or of credit to private industry, the debt limit, etc., it constitutes multiple amendments which require separate presentation to the people.

The fact that a proposed amendment may affect other provisions of the Constitution does not necessarily constitute such amendment more than one amendment within the meaning of Section 1, Article XVI.

This section is directed to those instances where two or more different objects are sought to be accomplished in a single proposal. The singleness of purpose or object sought to be accomplished by the amendment is the test as to whether it complies with such section.

Thus, where an amendment to the Constitution relates to a single purpose or object and all else contained therein is incidental and reasonably necessary to effectuate the purpose of the amendment, such amendment is not violative of the provisions of Section 1, Article XVI. *State, ex rel. Hudd,* v. *Timme, Secy. of State,* 54 Wis. 318, 11 N. W. 785; *Lobaugh* v. *Cook, Clerk,* 127 Iowa 181, 102 N. W. 1121.

Section 13, Article VIII, is a new section of the Constitution. It was submitted as a unit to the voters. This amendment has a single purpose, to allow the state and governmental sub-

divisions to give financial assistance to private industry or to other governmental units in order to create new employment within this state. It constitutes but a single amendment within the meaning of Section 1, Article XVI of the Ohio Constitution.

The second contention of the relator is that the description of the amendment as set forth on the ballot was improper and inadequate, and thus the provision is void.

An examination of this statemment shows that it is a clear and concise statement of the proposed amendment. It was sufficient to inform the voters of the contents of the amendment.

Next, relator urges that the exclusion of electric and gas companies from the benefits of this amendment constitutes a denial of equal protection and thereby renders the amendment void.

In relation to this question, relator admits that a reasonable classification is proper. However, it is relator's position that the exclusion of electric and gas companies from the operation of this section constitutes an unreasonable classification, that there is no sound basis for such exclusion, and that it has the effect of benefiting existing companies by preventing new competition.

The ultimate question in any classification problem is whether it has some reasonable basis, not whether some were excluded from such class who might well have been included therein.

So long as classifications have a real and substantial basis they cannot be said to be violative of the equal protection clause even though the lines drawn therein are very narrow. *Atchison, Topeka & Santa Fe Rd. Co. v. Matthews*, 174 U. S. 96; *Carmichael, Atty. Genl., v. Southern Coal & Coke Co.*, 301 U. S. 495.

Public utilities being legal monopolies by their very nature are peculiarly subject to classification. Public utilities operate in a designated area and are not ordinarily subject to competition therein. The tendency is to expand existing utilities rather than to permit the creation of new companies. There is small likelihood that any one would attempt to get permission to compete in any given area serviced by an existing public utility, and if such permission could be obtained the ultimate result

would be that although new jobs were created by the new company the existing utility, if it were deprived of part of its service area, would be forced to reduce its work force.

Unlike ordinary business, competition is discouraged rather than encouraged in this field. Such a classification, excluding gas and electric companies, cannot be said to be unreasonable and the amendment does not violate the equal protection clause on this basis.

Relator urges also that the amendment is discriminatory in that it is not applicable to existing businesses unless the new construction will create new jobs. It cannot be used to maintain the present work force.

The following reasoning in *Allied Stores of Ohio, Inc.*, v. *Bowers, Tax Commr.*, 358 U. S. 522, 528, is applicable to the present situation.

"'* * * That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy. * * *

"Coming directly to the concrete problem now before us, it has repeatedly been held and appears to be entirely settled that a statute which encourages the location within the state of needed and useful industries by exempting them, though not also others, from its taxes is not arbitrary and does not violate the equal protection clause of the Fourteenth Amendment. * * * Similarly, it has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the equal protection clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. * * *"

Next, relator urges that this amendment does not serve a valid public purpose.

He points out that the use of public funds to aid private enterprise has not been considered a public purpose regardless of the fact that it may benefit the community. He cites a number of cases to substantiate his position including *Lowell* v. *City of Boston*, 111 Mass. 454, 15 Am. Rep. 39, and *Auditor of Lucas County* v. *State, ex rel. Boyles*, 75 Ohio St. 114.

Both parties seem to have missed the salient point. Here

we are not concerned with a legislative act. The problem before us is an amendment to the Constitution by the people of Ohio. If the people think that aid to private enterprise serves a public purpose and amend the Constitution to so provide, barring some infringement of the federal Constitution, such determination by the people becomes the law of the state. The people have spoken through their fundamental document.

Relator questions the validity of Section 1724.10, Revised Code, on various grounds.

He first directs his attack to the part of the section which reads as follows:

"* * * insure mortgage payments required by a first mortgage on any industrial, economic, commercial, or civic property for which funds have been loaned by any person, corporation, bank, or financial or lending institution upon such terms and conditions as the community improvement corporation may prescribe."

It is relator's position that this provision exceeds the powers granted under the constitutional provision. He urges that the constitutional provision permits only the guaranteeing of loans made by a public body and does not authorize the insuring of loans by private companies.

No such limitation is placed in Section 13, Article VIII. This section provides in part:

"* * * to make or guarantee loans and to borrow money and issue bonds or other obligations to provide moneys for the acquisition, construction, enlargement, improvement, or equipment, of such property, structures, equipment and facilities. Laws may be passed to carry into effect such purposes and * * * to authorize the making of guarantees and loans and the lending of aid and credit * * *."

If the framers of the amendment desired to so limit the provision they could well have done so. They did not. There is nothing in the terms of the amendment which would require such a conclusion.

In relation to Section 1724.10, Revised Code, relator urges also that it is invalid because it fails to contain any limitation as to payment of any liability incurred through the insurance of mortgage payments out of money raised by taxation.

40

Section 13, Article VIII, provides in part:

"* * * provided that money raised by taxation shall not be obligated or pledged for the payment of bonds or other obligations issued or guarantees made * * *."

The statute in question was enacted pursuant to and as a result of this amendment. It provides the machinery to make such amendment operative.

Therefore, it must be read in relation to such amendment and the limitations contained therein. In other words, the constitutional limitation is by implication a part of the statute, and the mere failure to set it forth in the statute does not invalidate the provision. *State, ex rel. Clarke,* v. *Cook, Aud.,* 103 Ohio St. 465, 469.

It is clear, therefore, that the failure to include in a statute that which is contained therein by constitutional implication does not invalidate the statute on the basis that it exceeds or is contrary to the constitutional provision.

Relator's final argument is that Section 1724.10, Revised Code, is invalid on the ground that it constitutes an unlawful delegation of governmental power reserved to counties and municipalities to private corporations.

This section in general provides that a county or municipality may designate a community improvement corporation as its agent for the industrial, commercial and research development of the area.

An examination of the provisions of this section indicates no abdication of governmental powers to the corporation. Plans prepared by the corporation must be approved by the legislative authority, the debts incurred by the corporation are solely those of the corporation, not of the political subdivision, and any sale of the political subdivision's property may be made only after the legislative body has determined that it is not necessary for governmental use, and that the proposed use will be of economic benefit to the community.

There is no unlawful delegation of legislative power.

The motion for summary judgment in favor of the respondent is sustained.

*Judgment accordingly.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT, SCHNEIDER and BROWN, JJ., concur.