THE STATE EX REL. MORGAN, APPELLANT, *v.* STATE TEACHERS
RETIREMENT BOARD OF OHIO, APPELLEE.

[Cite as *State ex rel. Morgan v. State Teachers Retirement
Bd. of Ohio,* 121 Ohio St.3d 324, 2009-Ohio-591.]

(No. 2008–1441—Submitted February 4, 2009—Decided February 18, 2009.)

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying a writ of mandamus to compel appellee, State Teachers Retirement Board of Ohio, to reinstate the disability-retirement benefits of appellant, Sharon A. Morgan, and to pay those benefits from the date that the retirement board terminated them. Because the retirement board did not abuse its discretion in terminating Morgan's disability-retirement benefits, we affirm.

### Disability–Retirement Application, Medical Evaluations, and Board Determination

{¶ 2} Morgan worked as a junior-high-school librarian until June 1988. Since February 1986, she has experienced flu-like symptoms and chronic fatigue.

{¶ 3} In December 1987, Morgan applied for disability-retirement benefits from the State Teachers Retirement System. Thomas E. Williams, M.D., Morgan's attending physician, diagnosed her as having chronic systemic viral syndrome and certified that she was incapacitated from her performance as a teacher, although he did not consider her disability to be permanent.

{¶ 4} Additional medical examinations ordered by the retirement board confirmed a diagnosis of chronic fatigue syndrome and certified that Morgan was disabled. Ultimately, the disability review committee of the retirement board recommended granting Morgan's application, and the retirement board granted disability retirement to Morgan in 1988.

### Reexamination for Continuation of Disability Retirement

{¶ 5} In 2005, the retirement board requested that Morgan's treating physician provide a report on her medical status. In her report, Dr. Marie Kuchynski, a

rheumatologist, noted her diagnosis of chronic fatigue syndrome and fibromyalgia and stated that Morgan's major symptoms were fatigue, muscle and joint pain, swollen glands, and a low-grade fever.

{¶ 6} The retirement board then ordered Claire V. Wolfe, M.D., to examine Morgan to determine whether her disability retirement should be continued. Dr. Wolfe noted that Morgan was able to easily get up from a chair and move around the examining room, that her reflexes and muscles were normal, and that her range of motion was generally good. Morgan advised Dr. Wolfe of Morgan's daily activities, which include feeding herself, her husband, and her cats, flower gardening, and taking pictures. Dr. Wolfe noted Morgan's complaints of fatigue and pain throughout her report.

{¶ 7} As a result of her examination of Morgan and a review of Morgan's medical records, Dr. Wolfe diagnosed Morgan with "[p]ossible fibromyalgia syndrome with chronic fatigue/versus somatoform disorder." Dr. Wolfe concluded that Morgan was not disabled, because of her lack of objective abnormalities:

{¶ 8} "Mrs. Morgan has never had any significant elevations of her Epstein–Barr titer, itself remarkable since 80% of the adult population has elevated titers. I find that her subjective symptoms far outweigh anything objective. I find that she is totally invested in her diagnosis and the presumed disability and restricted activities that it imposes upon her. I do not find anything on today's examination of an objective nature that would, in my opinion, preclude her from her previous job as a librarian or any teaching activities."

{¶ 9} Dr. Wolfe certified that Morgan was capable of resuming regular full-time service similar to that from which she had retired and that disability-retirement benefits should not be continued. The medical review board recommended that the retirement board terminate Morgan's disability-retirement benefits.

{¶ 10} In response to the medical review board's recommendation, Morgan submitted a report from Leonard H. Calabrese, D.O., in which he diagnosed Morgan with severe chronic fatigue syndrome and fibromyalgia. In a subsequent letter, Dr. Calabrese noted that chronic fatigue syndrome was incapable of objective quantification:

{¶ 11} "Unfortunately, the index symptoms of chronic fatigue are those of fatigue and pain that cannot be objectively quantified. I know of no criteria that mandates [sic] objectification in terms of disability. Thus, we have used subjective measures measured over time which I believe creates a reliable index to judge the patient's capacity to work. We have been following this patient for many years. * * * [W]ith such a long track record and with symptoms being so consistent, indeed limited by pain and fatigue, I think the prognosis for return to gainful employment is extremely low."

{¶ 12} Upon request of the medical review board, Dr. Wolfe reviewed the additional medical material provided by Morgan and noted that although she did not disagree with Dr. Calabrese's findings, she believed that based on Morgan's lack of objective abnormalities, Morgan could still work in her previous job as a librarian:

{¶ 13} "I do not disagree with any of [Dr.] Calabrese's findings. As he notes, however, there are no objective abnormalities for the chronic fatigue or fibromyalgia and the inability to work and the disability from the symptoms are determined on a subjective basis. He notes that Mrs. Morgan has had these symptoms for years, has become progressively more disabled by them but has had no change in her objective status.

{¶ 14} "Additional information would, therefore, not change my opinion that, based on objective abnormalities, Sharon Morgan should be able to continue in her job as a librarian."

{¶ 15} On March 10, 2006, the retirement board terminated Morgan's disability-retirement benefits. Morgan appealed the decision and submitted additional medical evidence. Upon the request of the retirement board, Robert A. Bornstein, Ph.D., a neuropsychologist, examined Morgan and concluded that she was functioning within normal limits in most areas of higher cognitive function and that there was "no objective evidence of cognitive impairment that would interfere with her ability to perform her normal vocational duties." Bornstein noted that Morgan exhibited "a high level of concern over her health, and a tendency to focus on physical symptoms as a means of coping with or avoiding stress."

{¶ 16} On January 18, 2007, the retirement board held an appeal hearing at which Morgan appeared and testified. The retirement board affirmed its previous decision and terminated Morgan's disability-retirement benefits.

## Mandamus Case

{¶ 17} Morgan then filed a complaint in the Franklin County Court of Appeals for a writ of mandamus to compel the retirement board to reinstate Morgan's disability-retirement benefits and to pay her benefits from the date of termination. In June 2008, the court of appeals denied the writ. The court of appeals held that there was "no indication that Dr. Wolfe refused to examine [Morgan] for the conditions that allegedly caused the disability" and that the retirement board's decision could have properly been based on Dr. Wolfe's reports.

{¶ 18} This cause is now before the court upon Morgan's appeal as of right.

## Mandamus—Standard of Review

{¶ 19} Morgan asserts that the court of appeals erred in denying the requested extraordinary relief in mandamus to compel the retirement board to reinstate her

disability-retirement benefits. The General Assembly established the State Teachers Retirement System to pay retirement allowances and other benefits to public school teachers, and the State Teachers Retirement Board administers and manages the retirement system. R.C. 3307.03 and 3307.04.

{¶ 20} The determination of whether a retirement-system member is entitled to the continued receipt of disability-retirement benefits is within the exclusive authority of the retirement board, R.C. 3307.64, and there is no appeal from the retirement board's final decision terminating these benefits. *State ex rel. Hulls v. State Teachers Retirement Bd.*, 113 Ohio St.3d 438, 2007-Ohio-2337, 866 N.E.2d 483, ¶ 26. Because this decision is not appealable, mandamus is available to correct an abuse of discretion by the retirement board in its decision. *State ex rel. Ackerman v. State Teachers Retirement Bd.*, 117 Ohio St.3d 268, 2008-Ohio-863, 883 N.E.2d 445, ¶ 16. "An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable." *State ex rel. Stiles v. School Emps. Retirement Sys.*, 102 Ohio St.3d 156, 2004-Ohio-2140, 807 N.E.2d 353, ¶ 13.

### Reliance on Dr. Wolfe's Reports

{¶ 21} Morgan argues that the retirement board abused its discretion in terminating her disability-retirement benefits because it improperly relied on Dr. Wolfe's reports, which disregarded the fact that the disability symptoms of chronic fatigue syndrome are subjective rather than objective. Chronic fatigue syndrome is a " 'syndrome marked by incapacitating fatigue. The patient's symptoms may wax and wane, but are severely debilitating and may last for months or years.' " *State ex rel. Bruce v. State Teachers Retirement Bd. of Ohio*, 153 Ohio App.3d 589, 2003-Ohio-4181, 795 N.E.2d 110, ¶ 114, quoting Taber's Cyclopedic Medical Dictionary (18th Ed.1997) 384. The symptoms of patients with chronic fatigue syndrome " 'are difficult to validate objectively, but are subjectively debilitating.' " *Rose v. Hartford Financial Servs. Group, Inc.* (C.A.6, 2008), 268 Fed.Appx. 444, 446, fn. 3, quoting Taber's Cyclopedic Medical Dictionary (19th Ed.2001) 402.

{¶ 22} Notwithstanding Morgan's claims to the contrary, there is nothing in Dr. Wolfe's reports that indicate she ignored Morgan's diagnosis of chronic fatigue syndrome or her subjective complaints. In this regard, Morgan erroneously argues that objective medical evidence is irrelevant in the retirement board's determination of whether she is still disabled.

{¶ 23} As we recently held, even for medical conditions with symptoms that are often unsupported by objective medical evidence, "subjective complaints are not conclusive of disability, and objective medical evidence is still relevant to a determination of the severity of the condition." *State ex rel. VanCleave v. School Emps. Retirement Sys.*, 120 Ohio St.3d 261, 2008-Ohio-5377, 898 N.E.2d 33, ¶ 47; see also *Vance v. Commr. of Social Sec.* (C.A.6, 2008), 260 Fed.Appx. 801, 806,

quoting *Arnett v. Commr. of Social Sec.* (C.A.6, 2003), 76 Fed.Appx. 713, 716 (" 'If there is [objective medical evidence of an underlying medical condition], the examination focuses on 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the disabling pain' ").

{¶ 24} More specifically, courts have held that "[w]hile the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, *the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.*" (Emphasis added.) *Rose,* 268 Fed.Appx. at 453, quoting *Boardman v. Prudential Ins. Co. of Am.* (C.A.1, 2003), 337 F.3d 9, 17, fn. 5. In both *Rose* and *Boardman,* courts upheld the termination of long-term disability benefits when the claimants' medical records failed to indicate limitations, based on objective findings, that would preclude them from performing suitable work. Therefore, Dr. Wolfe could properly consider the lack of objective medical evidence of physical limitations caused by the symptoms of Morgan's chronic fatigue syndrome and fibromyalgia to support her conclusion that Morgan is not disabled.

{¶ 25} Moreover, the court of appeals did not err by observing that "[i]n essence, Dr. Wolfe simply did not believe that relator's subjective symptoms prevented relator from working as a librarian." The court's observation was a reasonable assessment of Dr. Wolfe's opinion as evidenced by her reports.

{¶ 26} Finally, the retirement board's decision to terminate Morgan's disability-retirement benefits was also supported by Bornstein's report that Morgan's cognitive functioning was normal. This evaluation, Dr. Wolfe's reports, and the other medical evidence before the retirement board supported its decision. See *Hulls,* 113 Ohio St.3d at 446, 2007-Ohio-2337, 866 N.E.2d 483, ¶ 42, quoting *State ex rel. Ruby v. State Teachers Retirement Sys. of Ohio* (Dec. 6, 1989), Summit App. No. 13844, 1989 WL 147983, * 1 (" 'where the record contains evidence which supports the agency's findings, this court will not disturb that determination' "). See also Hastings, Manoloff, Sheeran, Stype, and Jaffe, Baldwin's Ohio School Law (2007), Section 11:30, fn. 1 (" 'So long as evidence—even if conflicting—supports the board's findings, a reviewing court will not disturb them' ").

## Conclusion

{¶ 27} Based on the foregoing, the retirement board did not abuse its discretion in terminating Morgan's disability-retirement benefits. Therefore, Morgan has failed to establish either a clear legal right to the reinstatement of her disability-retirement benefits or a corresponding clear legal duty on the part of

the retirement board to reinstate them. Accordingly, we affirm the judgment of the court of appeals denying the writ of mandamus.

Judgment affirmed.

MOYER, C.J., and O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 28} I respectfully dissent. I believe that the reports of Dr. Claire Wolfe are not reliable evidence upon which the retirement board may base its decision to terminate Morgan's disability retirement benefits. I agree with the magistrate. It appears that Dr. Wolfe did not evaluate Morgan for chronic fatigue syndrome and fibromyalgia and that her reports strongly suggest that she does not accept chronic fatigue syndrome as a legitimate medical disorder.

{¶ 29} Chronic fatigue syndrome was clinically defined in 1988 by the Centers for Disease Control and Prevention. It is an illness characterized by profound, debilitating fatigue lasting at least six months, and it does not improve by rest. It may become worse with physical or mental activities. Its primary symptoms include problems with memory and concentration, sleep disturbance, muscle and joint pain, headaches, tender lymph nodes, recurrent sore throat, and extreme exhaustion which lasts more than 24 hours after physical or mental exertion. www.cdc.gov/cfs/.

{¶ 30} Chronic fatigue syndrome is diagnosed by excluding other medical and psychiatric causes of chronic fatigue illnesses. Fukuda et al., The Chronic Fatigue Syndrome: A Comprehensive Approach to Its Definition and Study (1994), 121 Annals of Internal Medicine 953. No tests to diagnose this condition have been validated by scientific studies. Id.

{¶ 31} Morgan has suffered symptoms of chronic fatigue since 1985. She was originally diagnosed with chronic fatigue syndrome in 1987. She began treating with Dr. Kuchynski in 1995. In 2005, Dr. Kuchynski reported that Morgan continued to be disabled from chronic fatigue syndrome and fibromyalgia. Her symptoms include fatigue, muscle and joint pain, swollen glands, and low-grade fever. She also has trouble sleeping, which results in cognitive problems with concentrating and focusing on tasks.

{¶ 32} In addition, Morgan was seen by Dr. Leonard Calabrese of the Cleveland Clinic. He acknowledged that the symptoms of chronic fatigue and pain cannot be objectively quantified. But he noted that Morgan's 17–year history of consistent symptoms and limitations due to pain and fatigue supports his diagnosis of chronic fatigue syndrome and fibromyalgia.

{¶ 33} After having examined Morgan, Dr. Wolfe reported that Morgan had more subjective than objective symptoms. Dr. Wolfe concluded that she found nothing objective that would prevent Morgan from performing the duties of her previous job as a school librarian. The magistrate in the court below noted that Dr. Wolfe's report "never presents or discusses the medically accepted criteria for rendering a diagnosis of chronic fatigue syndrome. The failure to address criteria and the failure to indicate acceptance of criteria for chronic fatigue syndrome strongly suggests [sic] that Dr. Wolfe does not recognize chronic fatigue syndrome as a legitimate medical condition that can become the basis for disability." *State ex rel. Morgan v. State Teachers Retirement Bd. of Ohio*, Franklin App. No. 07AP–115, 2008-Ohio-2796, ¶ 71.

{¶ 34} Dr. Wolfe also reviewed reports from Dr. Kuchynski and Dr. Calabrese. Dr. Wolfe stated that she did not disagree with Dr. Calabrese's findings but noted that "there are no objective abnormalities for the chronic fatigue or fibromyalgia." Id. at ¶ 41. She pointed out that Dr. Calabrese noted that Morgan has become more disabled by her subjective symptoms but "has had no change in her objective status." Id. at ¶ 41. Dr. Wolfe reiterated her opinion that "based on objective abnormalities, [Morgan] should be able to continue in her job as a librarian." Id.

{¶ 35} Dr. Wolfe reached a similar conclusion with respect to Susan Van-Cleave's application for disability-retirement benefits in *State ex rel. VanCleave v. School Emps. Retirement Sys.*, 120 Ohio St.3d 261, 2008-Ohio-5377, 898 N.E.2d 33. VanCleave was diagnosed with various back conditions as well as fibromyalgia, " 'an unusual impairment in that its symptoms are often not supportable by objective medical evidence.' " Id. at ¶ 46, quoting *Vance v. Commr. of Social Sec.* (C.A.6, 2008), 260 Fed.Appx. 801, 806, 2008 WL 162942. Dr. Wolfe examined VanCleave and reported that in her opinion, VanCleave had no objective deficits that would prevent her from continuing her work as a school custodian. In a subsequent report, Dr. Wolfe stated: "I do not believe the fibromyalgia is functionally disabling" and "I do not believe there are objective abnormalities that would preclude Mrs. VanCleave's work." [1] Id. at ¶ 18.

---

1. In *VanCleave*, the primary issue involved whether to extend *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, to require the State Employees Retirement System ("SERS") to identify the evidence upon which it relied and to explain its reasons for denying VanCleave's application, or whether such an explanation was constitutionally required by procedural due process. We also determined that SERS did not abuse its discretion when it relied upon the opinion of Dr. Wolfe to deny VanCleave's application for disability-retirement benefits. Although I voted with the majority in *VanCleave*, I am becoming concerned with an apparent pattern in Dr. Wolfe's opinions in which she routinely relies on the absence of objective medical evidence and discounts subjective symptoms to recommend that disability be denied. I believe that the retirement board should address the rigidity of these opinions in light of evolving medical evidence

{¶ 36} In *State ex. rel Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, 879 N.E.2d 195, Dr. Wolfe opined that Michele Grein had no significant objective structural abnormalities to substantiate her claim of disability due to chronic myofascial pain syndrome. Dr. Wolfe concluded that after physical therapy, Grein should be able to resume her duties as a state trooper. Id. at ¶ 10.

{¶ 37} In *State ex rel. Bruce v. State Teachers Retirement Bd. of Ohio*, 153 Ohio App.3d 589, 2003-Ohio-4181, 795 N.E.2d 110, the relator's alleged disability was due to fibromyalgia and chronic fatigue syndrome. Dr. Wolfe examined the relator in that case. She noted that the relator's fibromyalgia was not disabling, and she attributed the relator's chronic fatigue since 1991 to lack of sleep or sleep disruption. Dr. Wolfe's report failed to even mention chronic fatigue syndrome, which caused the magistrate to question whether Dr. Wolfe was even aware that chronic fatigue syndrome was alleged as a basis for the application for disability benefits.

{¶ 38} Chronic fatigue syndrome, like fibromyalgia and chronic myofascial pain syndrome, is a medically recognized condition characterized mostly by subjective symptoms. Yet these conditions can be physically debilitating and disabling. I believe that the lack of objective findings alone is an insufficient reason for a doctor to conclude that a claimant is not disabled due to chronic fatigue syndrome.

{¶ 39} Dr. Wolfe has demonstrated a pattern of skepticism and bias toward chronic illnesses that cannot be objectively confirmed or diagnosed. She appears unwilling or unable to acknowledge that a person may be disabled when there are subjective symptoms only and a lack of objective abnormalities. Because I believe that Dr. Wolfe's reports are not reliable evidence upon which to terminate Morgan's disability-retirement benefits, I respectfully dissent.

PFEIFER, J., concurs in the foregoing opinion.

---

Manos, Martin, Pergram & Dietz Co., L.P.A., and James M. Dietz, for appellant.

Richard Cordray, Attorney General, and John E. Patterson, Assistant Attorney General, for appellee.

---

that conditions such as chronic pain syndrome and fibromyalgia may be disabling even though there are no objective symptoms.