THE STATE EX REL. OHIO LIBERTY COUNCIL ET AL. *v.*

BRUNNER, SECY. OF STATE, ET AL.

[Cite as *State ex rel. Ohio Liberty Council v. Brunner*,

125 Ohio St.3d 315, 2010-Ohio-1845.]

*Elections — Ohio Ballot Board's approval of a proposed constitutional amendment — Abuse-of-discretion standard — Writ granted.*

(No. 2010-0643 — Submitted April 27, 2010 — Decided April 29, 2010.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an action for a writ of mandamus to compel respondents Secretary of State Jennifer Brunner and the Ohio Ballot Board to certify the board's approval of a proposed constitutional amendment and to certify its approval to respondent Attorney General Richard Cordray. Because relators have established their entitlement to the requested extraordinary relief, we grant the writ.

**Facts**

{¶ 2} On March 21, 2010, the United States Congress enacted the Patient Protection and Affordable Care Act, which was signed into law by President Barack Obama on March 23. Pub.L.No. 111-148, 124 Stat. 119 (2010). Among other things, the act requires individuals to maintain minimum essential health-care coverage beginning in 2014 and imposes a penalty for failure to maintain this coverage. Section 1501, Subtitle F, Part 1 of the Patient Protection and Affordable Care Act.

{¶ 3} On March 22, relators gathered over 3,000 signatures to submit an initiative petition to amend the Ohio Constitution "to preserve the freedom of

Ohioans to choose their health care and health care coverage." Relators are Ohio Liberty Council, a nonprofit corporation and political action committee that is a statewide coalition of 25 grassroots groups, including nearly all of Ohio's Tea Party organizations; the Ohio Project, a ballot-issue committee; and five Ohio Liberty Council members who are state electors.

{¶ 4} On April 1, pursuant to R.C. 3519.01(A), the attorney general certified that relators' summary of their proposed amendment contained "a fair and truthful statement of the proposed constitutional amendment" and then forwarded the proposed amendment to the secretary of state, in her capacity as the chair of the Ohio Ballot Board, for the board's consideration under R.C. 3505.062.

{¶ 5} The amendment, which proposes to add Section 21 to Article I of the Ohio Constitution, states:

{¶ 6} "**ARTICLE I**

{¶ 7} "**Preservation of the freedom to choose health care and health care coverage**

{¶ 8} "**Section 21 (A)** No federal, state, or local law or rule shall compel, directly or indirectly, any person, employer, or health care provider to participate in a health care system.

{¶ 9} "**Section 21 (B)** No federal, state, or local law or rule shall prohibit the purchase or sale of health care or health insurance.

{¶ 10} "**Section 21 (C)** No federal, state, or local law or rule shall impose a penalty or fine for the sale or purchase of health care or health insurance.

{¶ 11} "**Section 21 (D)** This section does not affect laws or rules in effect as of March 19, 2010; affect which services a health care provider or hospital is required to perform or provide; affect terms and conditions of government employment; or affect any laws calculated to deter fraud or punish wrongdoing in the health care industry.

{¶ 12} **"Section 21 (E)** As used in this Section,

{¶ 13} "(1) 'Compel' includes the levying of penalties or fines.

{¶ 14} "(2) 'Health care system' means any public or private entity or program whose function or purpose includes the management of, processing of, enrollment of individuals for, or payment for, in full or in part, health care services, health care data, or health care information for its participants.

{¶ 15} "(3) 'Penalty or fine' means any civil or criminal penalty or fine, tax, salary or wage withholding or surcharge or any named fee established by law or rule by a government established, created, or controlled agency that is used to punish or discourage the exercise of rights protected under this section." (Boldface sic.)

{¶ 16} On April 9, the ballot board held a meeting to determine, pursuant to R.C. 3505.062(A), whether relators' initiative petition contained more than one constitutional amendment. In the board's discussion, the secretary of state opined that although Sections A, B, and C of the proposed amendment were arguably related to the subject of individual choice in health care and health insurance, Section D was not.

{¶ 17} The secretary further explained that Section C of the proposed amendment could be successfully rationalized as relating to freedom of choice, but Section D could not:

{¶ 18} "But then when I get to (D), (D) is where I really – I mean, (C) I could probably, you know, successfully rationalize that. But when I get to (D) is where I run into problems where I don't see where I am talking about the purchase or sale of health insurance, but we're talking directly about government regulation without dealing with that industry of – of individual choice."

{¶ 19} At the conclusion of the meeting, the ballot board adopted the secretary's recommendation, dividing the petition into two separate issues and certifying to the attorney general the original petition as two proposed

3

constitutional amendments. In the ballot board's April 9 letter to the attorney general, the board stated:

{¶ 20} "We, the undersigned members of the Ohio Ballot Board, hereby divide and certify that the initiative petition that you sent to us on April 1, 2010, proposing to add Section 21 to Article I of the Ohio Constitution contains two proposed constitutional amendments. The two proposed amendments are: one that deals with the freedom to choose health care and health care coverage; and the second that deals with the governance and oversight of the health care and health insurance industries."

{¶ 21} Four days later, on April 13, relators filed this action for writs of mandamus and prohibition to compel the secretary of state and the ballot board to certify the board's approval of the proposed constitutional amendment as written and to certify its approval to the attorney general. In the alternative, relators request that the writs compel the attorney general to certify relators' proposed constitutional amendment pursuant to R.C. Chapter 3519. On April 15, we granted an alternative writ on relators' mandamus claim and issued an accelerated schedule for responses to the complaint and the submission of evidence and briefs. *State ex rel. Ohio Liberty Council v. Brunner*, 124 Ohio St.3d 1548, 2010-Ohio-1662, 924 N.E.2d 849. We also dismissed relators' prohibition claim. Id.

{¶ 22} Respondents submitted answers, and the parties submitted evidence and briefs.

{¶ 23} This cause is now before the court for our consideration of the merits.

**Legal Analysis**

*Preliminary Matters*

{¶ 24} Before addressing the merits of relators' claim, it is instructive to remember what our resolution of their claim does not address. This case is not about the relative merits of relators' proposed constitutional amendment and

whether its passage would actually result in the specified purpose of preserving the freedom to choose health care and health-care coverage. Nor is this case about the constitutionality or legality of the substance of the proposed amendment. "Any claims alleging the unconstitutionality or illegality of the substance of the proposed [initiative], or actions to be taken pursuant to the [initiative] when enacted, are premature before its approval by the electorate." *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 6, 716 N.E.2d 1114.

{¶ 25} Instead, the limited legal issue before us is whether the ballot board abused its discretion and clearly disregarded applicable law by determining that relators' initiative petition contained more than one proposed constitutional amendment.

*Mandamus*

{¶ 26} Relators request a writ of mandamus to compel the ballot board to certify its approval of the single proposed amendment as written and certify its approval to the attorney general. To be entitled to the writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of respondents to provide it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 119, 2009-Ohio-4805, 914 N.E.2d 397, ¶ 11.

*Lack of Adequate Remedy in the Ordinary Course of Law*

{¶ 27} Because of the proximity of the June 30 deadline to file the signed initiative petition with the secretary of state to have the proposed amendment submitted to the electorate at the November 2, 2010 general election, relators lack an adequate remedy in the ordinary course of law. See *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 10; Section 1a, Article II, Ohio Constitution. No right to appeal from the ballot board's determination is granted. See R.C. 3505.062; see also *State ex rel. Morgan v. State Teachers Retirement Bd. of Ohio*, 121 Ohio St.3d

324, 2009-Ohio-591, 904 N.E.2d 506, ¶ 20 (mandamus is an appropriate remedy to correct an abuse of discretion by a public board in a decision that is not appealable).

{¶ 28} And notwithstanding respondents' claim to the contrary, relators' mandamus claim is not an ill-disguised claim of declaratory judgment and prohibitory injunction, and neither a declaratory judgment nor a prohibitory injunction would constitute an adequate remedy in the ordinary course of law. A declaratory judgment would not be an adequate remedy without a mandatory injunction ordering the ballot board to immediately certify its approval of relators' proposed constitutional amendment, as written, to the attorney general. See *State ex rel. Mill Creek Metro. Park Dist. Bd. of Commrs. v. Tablack* (1999), 86 Ohio St.3d 293, 297, 714 N.E.2d 917. And a prohibitory injunction would not provide relators with the relief they request: an order to *compel* the ballot board to comply with its duties under R.C. 3505.062 to certify its approval of their proposed constitutional amendment as written. Nor would it be sufficiently speedy, given the imminent deadline.

{¶ 29} Therefore, relators' complaint properly invokes our original jurisdiction, and an action in the court of common pleas for a declaratory judgment and a prohibitory injunction would not provide an adequate remedy in the ordinary course of law.

*Clear Legal Right and Clear Legal Duty*

{¶ 30} In extraordinary actions challenging the decisions of the secretary of state and boards of elections, for example, the standard is whether they engaged in fraud, corruption, or abuse of discretion or acted in clear disregard of applicable legal provisions. See generally *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 26. This standard is also appropriate for gauging the propriety of the ballot board's determination here. Therefore, in the absence of any evidence of fraud or corruption, the dispositive

issue is whether the ballot board abused its discretion and clearly disregarded applicable law in determining that relators' initiative petition contained two proposed constitutional amendments and in dividing the petition into two and in certifying the two proposed amendments to the attorney general.

{¶ 31} Under Section 1, Article II of the Ohio Constitution, "the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided." "The first aforestated power reserved by the people is designated the initiative, and the signatures of ten per centum of the electors shall be required upon a petition to propose an amendment to the constitution." Section 1a, Article II of the Ohio Constitution. "The limitations expressed in the constitution, on the power of the general assembly to enact laws, shall be deemed limitations on the power of the people to enact laws." Section 1, Article II of the Ohio Constitution.

{¶ 32} Under Section 1, Article XVI of the Ohio Constitution, the General Assembly is authorized to propose a constitutional amendment by joint resolution, and one of the requirements specified therein for a legislatively initiated proposed constitutional amendment is that each amendment be submitted separately to the electors:

{¶ 33} "When more than one amendment shall be submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment, separately."

{¶ 34} R.C. 3519.01(A) imposes a similar requirement on citizen-initiated proposed constitutional amendments:

{¶ 35} "*Only one proposal of law or constitutional amendment to be proposed by initiative petition shall be contained in an initiative petition to enable the voters to vote on that proposal separately.* A petition shall include the text of

any existing statute or constitutional provision that would be amended or repealed if the proposed law or constitutional amendment is adopted.

{¶ 36} "Whoever seeks to propose a law or constitutional amendment by initiative petition shall, by a written petition signed by one thousand qualified electors, submit the proposed law or constitutional amendment and a summary of it to the attorney general for examination. Within ten days after the receipt of the written petition and the summary of it, the attorney general shall conduct an examination of the summary. *If, in the opinion of the attorney general, the summary is a fair and truthful statement of the proposed law or constitutional amendment, the attorney general shall so certify and then forward the submitted petition to the Ohio ballot board for its approval under division (A) of section 3505.062 of the Revised Code.* If the Ohio ballot board returns the submitted petition to the attorney general with its certification as described in that division, the attorney general shall then file with the secretary of state a verified copy of the proposed law or constitutional amendment together with its summary and the attorney general's certification." (Emphasis added.)

{¶ 37} R.C. 3505.062, in turn, specifies the duty of the ballot board to determine whether an initiative petition contains only one proposed law or constitutional amendment:

{¶ 38} "The Ohio ballot board shall do all of the following:

{¶ 39} "(A) *Examine, within ten days after its receipt, each written initiative petition received from the attorney general under section 3519.01 of the Revised Code to determine whether it contains only one proposed law or constitutional amendment so as to enable the voters to vote on a proposal separately.* If the board so determines, it shall certify its approval to the attorney general, who then shall file with the secretary of state in accordance with division (A) of section 3519.01 of the Revised Code a verified copy of the proposed law or

constitutional amendment together with its summary and the attorney general's certification of it.

**{¶ 40}** "*If the board determines that the initiative petition contains more than one proposed law or constitutional amendment, the board shall divide the initiative petition into individual petitions containing only one proposed law or constitutional amendment so as to enable the voters to vote on each proposal separately and certify its approval to the attorney general.* If the board so divides an initiative petition and so certifies its approval to the attorney general, the petitioners shall resubmit to the attorney general appropriate summaries for each of the individual petitions arising from the board's division of the initiative petition, and the attorney general then shall review the resubmissions as provided in division (A) of section 3519.01 of the Revised Code." (Emphasis added.)

**{¶ 41}** Because this separate-petition requirement is comparable to the separate-vote requirement for legislatively initiated constitutional amendments under Section 1, Article XVI of the Ohio Constitution, our precedent construing the constitutional provision is instructive in construing the statutory requirement. In *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, at ¶ 34, we set forth the test for determining satisfaction of the separate-vote requirement:

**{¶ 42}** "[T]he applicable test for determining compliance with the separate-vote requirement of Section 1, Article XVI is that 'a proposal consists of one amendment to the Constitution only so long as each of its subjects bears some reasonable relationship to a single *general* object or purpose.' (Emphasis sic.) [*State ex rel.*] *Roahrig* [*v. Brown* (1972)], 30 Ohio St.2d [82] at 84, 59 O.O.2d 104, 282 N.E.2d 584. 'Thus, where an amendment to the Constitution relates to a single purpose or object and all else contained therein is incidental and reasonably necessary to effectuate the purpose of the amendment, such amendment is not violative of the provisions of Section 1, Article XVI.' *State ex rel. Burton v.*

*Greater Portsmouth Growth Corp.* (1966), 7 Ohio St.2d 34, 36, 36 O.O.2d 19, 218 N.E.2d 446. Courts have generally taken a 'liberal [view] in interpreting what such a single general purpose or object may be.' See [*State ex rel.*] *Foreman* [*v. Brown* (1967)], 10 Ohio St.2d [139] at 146, 39 O.O.2d 149, 226 N.E.2d 116; see, also, cases from other jurisdictions cited at fn. 7."

{¶ 43} In applying this test to relators' proposed constitutional amendment here, we hold that the proposal consists of one amendment because all the sections contained therein bear some reasonable relationship to the single general purpose of preserving Ohioans' freedom to choose their health care and health-care coverage as it existed on March 19, 2010, with certain exceptions, before the enactment of the Patient Protection and Affordable Care Act. Section 21(A) preserves this freedom of choice by prohibiting the government from compelling any person, employer, or health-care provider to participate in any health-care system. Section 21(B) advances the freedom of choice by forbidding the government to prohibit the purchase or sale of health care or health-care insurance. As relators observe, persons', employers', and health-care providers' choices of health care and health-care insurance will be inhibited if their ability to choose between different providers is limited. Moreover, it is manifest that Section 21(E) of the proposed amendment, which merely provides definitions for some of the terms used in the other sections of the amendment, relates to the single purpose as well. Respondents do not argue to the contrary.

{¶ 44} The ballot board and the secretary of state argue in their merit brief that although Sections A, B, D, and E of relators' proposed constitutional amendment all relate to the single general purpose or object of preserving freedom of choice of health care and health-care coverage, Section C does not because its "unintended consequences" "transcend the availability and terms of coverage" and, if passed, it would "fundamentally rework the way Ohio regulates the insurance industry." At its April 9 meeting, however, the board appeared to

acknowledge that Sections A, B, and C of relators' proposed constitutional amendment relate to the single purpose or object of choice, but that Section D, which specifies exceptions to the amendment, constituted the separate amendment. Specifically, the ballot board seemingly determined that this section of the proposed amendment "deals with the governance and oversight of the health care and the health insurance industries" rather than "the freedom to choose health care and health care coverage."

{¶ 45} For the following reasons, the ballot board abused its discretion and clearly disregarded R.C. 3505.062 in so concluding, regardless of whether it relied on Section C or Section D of the proposed amendment.

{¶ 46} First, despite respondents' claims to the contrary, the transcript of the ballot board's proceedings indicates that the board's decision was based on Section D rather than Section C of relators' proposed constitutional amendment. The secretary of state, in her capacity as chair of the ballot board, reasoned that Section C could be successfully rationalized as relating to the general purpose of freedom of choice of health care because a person "can't be penalized for exercising freedom of choice to the point that it would impede the choice."

{¶ 47} Second, Section 21(C) reasonably relates to the general purpose of freedom of choice by prohibiting the government from imposing a penalty or fine for the sale or purchase of health care or health-care insurance. As the secretary of state acknowledged at the ballot board meeting, persons' and employers' choices of health care and health-care insurance would be impaired if their choice of certain providers were subject to a substantial penalty or fine. That is, as relators argue, "if a law imposes such a steep penalty upon the purchase or sale of private health care or health insurance to render it commercially and economically unrealistic, that law would effectively preclude the ability of an Ohioan to choose private health care or health care coverage."

{¶ 48} The ballot board asserts that relators improperly read Section 21(C) as if it had added the language "based on the contents of the policy" to "[n]o federal, state, or local law or rule shall impose a penalty or fine for the sale or purchase of health care or health insurance." But this additional language is also not included at the end of Section 21(B), which uses language similar to that contained in Section C: "No federal, state, or local law or rule shall prohibit the purchase or sale of health care or health insurance." And relators admit that Section B is reasonably related to the single general purpose of freedom of choice.

{¶ 49} Third, Section D of the proposed constitutional amendment, which the ballot board determined at the board's meeting was different from the rest of the amendment, has no independent meaning separate from the remainder of the amendment. In fact, it specifies the exceptions to Sections A, B, and C by beginning with the phrase, "This section does not affect * * *."

{¶ 50} Fourth, limitations on the scope of or exceptions to the changes made in a proposed amendment do not change the single amendment into multiple amendments. In effect, every amendment generally contains some limitations, whether they be temporal or by subject matter. For example, in *Foreman*, 10 Ohio St.2d 139, 39 O.O.2d 149, 226 N.E.2d 116, paragraph four of the syllabus, we held that a proposed constitutional amendment that created a bond commission, but further specified the limited purposes for which money could be raised and used, did not violate the separate-vote requirement of Section 1, Article XVI of the Ohio Constitution by including limitations on the commission created by the amendment:

{¶ 51} "If the proposed amendment provided only that a bond commission should be created to raise revenues for public purposes, no one would seriously contend that the proposal included more than one object and that therefore it represented more than one amendment. The fact, that the proposal limits the authority of the commission by specifying the purposes for which the

revenues may be raised and used, does not turn the proposal into one for more than one amendment." Id. at 147.

{¶ 52} Fifth, relators' proposed constitutional amendment does not violate the purposes of the separate-vote requirement. " ' "The constitutional mandate that multifarious amendments shall be submitted separately has two great objectives. The first is to prevent imposition upon or deceit of the public by the presentation of a proposal which is misleading or the effect of which is concealed or not readily understandable. The second is to afford the voters freedom of choice and prevent 'logrolling' or the combining of unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts." ' " *Willke*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 28, quoting *Andrews v. Governor* (1982), 294 Md. 285, 295, 449 A.2d 1144, quoting *Fugina v. Donovan* (1960), 259 Minn. 35, 38, 104 N.W.2d 911, construing similar separate-vote requirements in the Maryland and Minnesota Constitutions.

{¶ 53} The inclusion of Sections C and D with the remaining sections of relators' proposed constitutional amendment does not render the amendment as a whole deceptive or constitute the attachment of an unrelated, unpopular proposal.

{¶ 54} Finally, notwithstanding the ballot board's implicit claim throughout its argument, there is no indication that the framers of the Constitution or the General Assembly intended that the citizens' constitutional right of initiative to propose a constitutional amendment be relegated to a stricter separate-vote requirement than that required for the legislature's constitutional right of initiative. In *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 19-20, we recently reiterated that "[i]n 1912, the electors of Ohio adopted the initiative and referendum amendment to the constitution" and that "[s]hortly thereafter, we explained the significance of the amendment" by recognizing the following:

{¶ 55} " 'Now, the people's right to the use of the initiative and referendum is one of the most essential safeguards to representative government. * * * The potential virtue of the "I. & R." does not reside in the good statutes and good constitutional amendments initiated, nor in the bad statutes and bad proposed constitutional amendments that are killed. Rather, the greatest efficiency of the "I. and R." rests in the wholesome restraint imposed automatically upon the general assembly and the governor and the possibilities of that latent power when called into action by the voters.' " Id. at ¶ 20, quoting *State ex rel. Nolan v. ClenDening* (1915), 93 Ohio St. 264, 277-278, 112 N.E. 1029.

{¶ 56} The power of initiative must be liberally construed, and the General Assembly cannot diminish that power. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 4, 591 N.E.2d 1186. By imposing the separate-vote requirement on citizen-initiated proposed amendments, therefore, the General Assembly could not diminish citizens' constitutional right of initiative by construing that requirement more strictly than the similar constitutional requirement applicable to the legislative right of initiative.

{¶ 57} Based on the foregoing, the ballot board has a clear legal duty to liberally construe the right of initiative, and as long as the citizen-initiated proposed amendment bears some reasonable relationship to a single general object or purpose, the board must certify its approval of the amendment as written without dividing it into multiple petitions. Because the board did not comply with this duty here, where relators' proposed constitutional amendment bears some reasonable relationship to their single general object or purpose of preserving freedom of choice in health care and health-care coverage, relators are entitled to the requested writ of mandamus.

*Remaining Claims*

{¶ 58} As a result of the foregoing, relators' alternate claim, that the ballot board lacks constitutional authority to divide a citizen-initiated proposed amendment, need not be addressed because it is not absolutely necessary to do so. See *State ex rel. Miller v. Brady*, 123 Ohio St.3d 255, 2009-Ohio-4942, 915 N.E.2d 1183, ¶ 11; *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 54 ("courts decide constitutional issues only when absolutely necessary").

{¶ 59} Moreover, relators' alternate claim for a writ of mandamus to compel the attorney general to certify their proposed constitutional amendment is moot.

*Extension of the Constitutional Deadline to Submit Initiative Petition*

{¶ 60} In their complaint, relators requested that the court grant them an "extension of days by which Relators may continue to gather signatures, so as to atone for the delay associated * * * with [the] Secretary of State and Ohio Ballot Board's wrongful conduct." We deny this request for the following reasons.

{¶ 61} First, although relators requested this relief in their complaint, they failed to include any argument in support of their request in their initial merit brief. Instead, they resuscitated their request only in their reply brief in response to the ballot board's extended argument in its brief that no extension of the constitutional deadline is warranted. Consequently, we need not address relators' request. See *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 26 (court need not address claim that was raised in complaint but was not specifically argued in merit brief); *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 61 (relators in election-related writ case are forbidden to raise issue in reply brief that was not raised in initial merit brief).

{¶ 62} Second, although we have extended the constitutional deadline for referendum petitioners to submit a petition when the secretary of state has

improperly refused to accept a summary and has thereby precluded the petitioners from circulating the petition for signatures, see *LetOhioVote.org*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 7, 54, and *State ex rel. Ohio AFL-CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 236-237, 631 N.E.2d 582, respondents have introduced evidence here that an extension of the deadline would impair the ability of the secretary and the boards of elections to comply with their constitutional and statutory duties regarding the initiative petition and would affect several additional constitutional and statutory deadlines before the November 2, 2010 election.

{¶ 63} For example, an extension of the deadline here could result in no resolution of whether the proposed constitutional amendment should be placed on the November 2, 2010 election ballot until after the absentee-ballot deadline has passed.

{¶ 64} Finally, the primary impetus of relators' proposed constitutional amendment is the portion of the Patient Protection and Affordable Care Act that requires individuals to maintain minimum essential health-care coverage and penalizes them if they do not, but these provisions are not effective until 2014. Therefore, relators need not be awarded an extension of time to place this issue on the November 2, 2010 ballot when they could seek placement of this initiative on the 2011, 2012, or 2013 general-election ballot without prejudice to their proposal or a departure from the constitutional deadlines.

{¶ 65} Therefore, we deny the request for an extension.

*Conclusion*

{¶ 66} Relators have established their entitlement to the requested extraordinary relief in mandamus. Therefore, we grant a writ of mandamus to compel the ballot board to immediately certify its approval of relators' proposed constitutional amendment, as drafted, to the attorney general as one amendment.

This result is consistent with our duty to liberally construe the citizens' right of initiative in favor of their exercise of this important right.

Writ granted.

PFEIFER, Acting C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., concurs and would have extended the deadline for submitting initiative petitions.

The late CHIEF JUSTICE THOMAS J. MOYER did not participate in the decision in this case.

_____

1851 Center for Constitutional Law and Maurice A. Thompson; and Robert M. Owens, for relators.

Richard Cordray, Attorney General, and Michael J. Schuler, Richard N. Coglianese, and Aaron N. Epstein, Assistant Attorneys General, for respondents Secretary of State and Ohio Ballot Board.

Richard Cordray, Attorney General, and Pearl M. Chin and Damian W. Sikora, Assistant Attorneys General, for respondent Attorney General.

_____