[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohioans for Secure & Fair Elections v. LaRose*, Slip Opinion No. 2020-Ohio-1459.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1459

THE STATE EX REL. OHIOANS FOR SECURE AND FAIR ELECTIONS ET AL. *v*. LAROSE ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohioans for Secure & Fair Elections v. LaRose*, Slip Opinion No. 2020-Ohio-1459.]**

*Elections—Mandamus—Writ of mandamus granted against Ohio Ballot Board to compel it to certify that initiative petition contains only one proposed constitutional amendment and writ of mandamus granted against the secretary of state to compel him to convene a meeting of the board to facilitate such certification—Writ sought against the attorney general denied.*

(No. 2020-0327—Submitted March 23, 2020—Decided April 14, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relators, Ohioans for Secure and Fair Elections and the individual petition-committee members[1] (collectively, "Ohio-SAFE"), seek writs of mandamus against respondents, Secretary of State Frank LaRose, the Ohio Ballot Board ("the board" or "the ballot board"), and Attorney General Dave Yost. We grant writs of mandamus against the board and the secretary of state and we deny the requested writ against the attorney general. Ohio-SAFE also requests an extension of time in which to circulate petitions, which we deny.

## I. Background

### A. *The procedure for amending the Ohio Constitution*

{¶ 2} The Ohio Constitution reserves to the people the right to propose amendments to the Constitution by initiative petition. Ohio Constitution, Article II, Section 1. The process for proposing a constitutional amendment begins with the submission of a petition, signed by at least 1,000 Ohio electors, to the Ohio attorney general, along with a summary of the proposed amendment. R.C. 3519.01(A), paragraph two. Within ten days of receiving the petition, the attorney general must determine whether the summary is a fair and truthful summary of the proposed amendment. *Id.* If the summary is fair and truthful, the attorney general must certify that fact and then forward the petition to the ballot board. *Id.*

{¶ 3} The ballot board consists of the secretary of state, who serves as chairperson, and four appointed members, no more than two of whom may be of the same political party. R.C. 3505.061(A) and (D). Within ten days after receiving a petition from the attorney general under R.C. 3519.01, the board must examine it "to determine whether it contains only one proposed * * * constitutional amendment so as to enable the voters to vote on a proposal separately." R.C.

---

1. The individual relators are Darlene L. English, Laura A. Gold, Hasan Kwame Jeffries, Isabel C. Robertson, and Ebony Speakes-Hall.

3505.062(A). If the board so determines, then the board will certify its approval to the attorney general, who will in turn file with the secretary of state a verified copy of the proposed amendment, along with the summary and the attorney general's certification. R.C. 3519.01(A); R.C. 3505.062(A). At that point, the petitioners may begin circulating petitions to gather the necessary signatures to qualify for the ballot.

{¶ 4} However, if the board determines that the initiative petition contains more than one proposed constitutional amendment, then the board shall "divide the initiative petition into individual petitions containing only one proposed * * * constitutional amendment so as to enable the voters to vote on each proposal separately." R.C. 3505.062(A), paragraph two. The petitioners must then submit separate summaries for each proposal to the attorney general for approval, R.C. 3519.01(A); R.C. 3505.062(A), before they may begin circulating petitions.

{¶ 5} To qualify for the ballot, the petitioners must file their petitions with the secretary of state no later than 125 days before the general election. Ohio Constitution, Article II, Section 1a. This year, in order to qualify for the November general-election ballot, the petitioners must submit their petitions on or before July 1, 2020. The petitions must contain valid signatures from at least 44 of Ohio's 88 counties, in an amount equal to at least five percent of the total votes cast in the last gubernatorial election in those 44 counties. *See id.*, Sections 1a, 1g. The signatures collected statewide must equal at least ten percent of the total vote cast for governor in the last gubernatorial election. *Id.*, Section 1a; *see id.*, Section 1g.

## B. The facts in the record

{¶ 6} On February 10, 2020, Ohio-SAFE submitted to Attorney General Yost an initiative petition and summary, titled the "Secure and Fair Elections Amendment," which would amend Article V, Section 1 of the Ohio Constitution. That section provides, in its entirety:

Every citizen of the United States, of the age of eighteen years, who has been a resident of the state, county, township, or ward, such time as may be provided by law, and has been registered to vote for thirty days, has the qualifications of an elector, and is entitled to vote at all elections. Any elector who fails to vote in at least one election during any period of four consecutive years shall cease to be an elector unless he again registers to vote.

{¶ 7} The proposed amendment would eliminate the 30-day registration requirement to be eligible to vote. In addition, the proposed amendment would guarantee the following rights to every U.S. citizen who is—or is eligible to become—an elector in Ohio:

(1)     If serving in the military or residing outside the United States, the right to have an absentee ballot sent, upon application, beginning 46 days before an election.

(2)     The right to be registered to vote upon applying for, renewing, updating, or replacing an Ohio driver's license, learner's permit, or state-issued identification card, unless the citizen declines in writing to be registered to vote.

(3)     The right to obtain and cast a ballot on weekdays during an early-voting period, to begin 28 days before an election (excepting state holidays) and include at least 12 hours of in-person early voting per weekend for the two weekends immediately preceding a general election.

(4)     The right to register and immediately vote, during either early or election-day voting, upon proof of residency.

(5)     The right of persons with disabilities to have full and equal access to register to vote and to vote.

In addition, the proposed amendment would require a "representative sample of statewide elections to be audited to ensure the accuracy and integrity of elections." The amendment provides that items 2 and 4 above will take effect on February 1, 2022.

{¶ 8} The petition submitted to Attorney General Yost contained the requisite 1,000 signatures. On February 20, Yost certified that the summary was a fair and truthful statement of the proposed constitutional amendment.

{¶ 9} The board met to consider the petition on March 2, 2020. Counsel for Ohio-SAFE addressed the board. He told the board that the various provisions of the Ohio-SAFE amendment have "a common purpose or common subject. The common purpose or subject is voting or voting and registration. Everything in the proposal today relates in some way to voting." Speaking in opposition, an attorney for the Ohio Republican Party argued that the proposed amendment "comprised * * * several discrete amendments, most of which should be voted on on a separate proposal, because there is not a sufficiently singular purpose to present all of these proposals to voters in a single ballot initiative."

{¶ 10} Following these presentations, Secretary of State LaRose made a motion for the board to find that the Ohio-SAFE amendment contained four separate proposals:

(1) "a constitutional right to requirements regarding casting ballots,"

(2) "a constitutional right regarding the manner in which one becomes a registered voter and when any registration is effective,"

(3) "a constitutional right for citizens with disabilities to register to vote and vote," and

(4) "postelection audits."[2]

---

2. LaRose prepared a color-coded copy of the amendment to show how he proposed to apportion the various sections of the amendment. That color-coded draft is in the record as Relators' Exhibit H, page 62 of the evidence PDF.

LaRose then made a motion for the board to divide the amendment into four separate proposals. The board approved the motion by a 3-2 vote. However, one of the members who voted against LaRose's proposal thought that the section of the proposed amendment relating to postelection audits did not reasonably relate to, and should be severed from, the rest.

## C. Procedural history

{¶ 11} Ohio-SAFE filed a complaint for writs of mandamus in this court on March 5, 2020. We granted Ohio-SAFE's motion for an expedited briefing schedule.

## II. Legal analysis

### A. Summary of the claims

{¶ 12} The complaint asks for three separate writs of mandamus. First, it seeks to compel the board to certify to the attorney general that the Ohio-SAFE petition contains only one proposed constitutional amendment. Second, to facilitate that process, the complaint requests a writ of mandamus compelling the secretary of state to convene a meeting of the board. Third, in the alternative, the complaint asks for a writ ordering the attorney general to file a verified copy of the proposed amendment, as written, along with the certified summary, with the secretary of state (essentially cutting the board out of the process).

### B. Standard of review

{¶ 13} To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Cleveland Right to Life v. State Controlling Bd.*, 138 Ohio St.3d 57, 2013-Ohio-5632, 3 N.E.3d 185, ¶ 2.

{¶ 14} In extraordinary actions challenging the decisions of the secretary of state or county boards of elections, " 'the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal

6

provisions.' " *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 26, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. This standard also applies when evaluating a ballot-board decision to divide a proposed constitutional amendment into separate ballot measures. *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 30.

### C. The mandamus claim against the ballot board

{¶ 15} We hold that a writ of mandamus should issue against the board because Ohio-SAFE has a clear legal right to certification of the proposed amendment as written and the board has a clear legal duty to make that certification.[3] Moreover, Ohio-SAFE does not have an adequate remedy because there is no statutory right to appeal from a decision of the ballot board. R.C. 3505.062; *Ohio Liberty Council* at ¶ 27. We grant a writ of mandamus directing the board to certify the amendment as drafted.

### D. The mandamus claim against the secretary of state

{¶ 16} We also hold that a writ of mandamus should issue against the secretary of state. Ohio-SAFE has a clear legal right to compel the secretary to convene a meeting of the ballot board, the secretary has a clear legal duty to convene such a meeting, and Ohio-SAFE has no adequate remedy in the ordinary course of law.

{¶ 17} R.C. 3505.061(D) provides that after its first meeting, the ballot board "shall meet at the call of the chairperson or upon the written request of three other members." The board and the secretary of state do not dispute that LaRose, as chairperson, *see id.*, has the statutory authority to convene the board, and they do not present any argument in opposition to this mandamus request other than their claim that the board's decision was correct in the first instance. Therefore, we grant

---

3. Although six justices agree that a writ should issue, there is no majority in support of a single legal rationale for that result.

a writ of mandamus directing LaRose to convene a meeting of the board for the purpose of certifying the amendment as drafted, to occur as soon as possible after the expiration of the seven-day notice period required by R.C. 3505.061(D).

*E. The mandamus claim against the attorney general*

{¶ 18} Ohio-SAFE asks for a writ compelling the attorney general to certify the amendment to the secretary of state. But until the board complies with this court's directive, the attorney general's duty will not have ripened, and therefore mandamus is premature. *State ex rel. Evans v. Tieman*, 157 Ohio St.3d 99, 2019-Ohio-2411, 131 N.E.3d 930, ¶ 16 (holding that mandamus will not lie to remedy the anticipated nonperformance of a duty).

{¶ 19} In its reply brief, Ohio-SAFE clarifies that it is not alleging that a duty presently exists on the part of the attorney general. Rather, Ohio-SAFE views this alternative remedy, which would simply cut the ballot board out of the process, as a reasonable response to the restrictions on in-person gatherings due to the current public-health crisis. We conclude that there are other reasonable ways to address those concerns, and so we will not abandon the basic rules governing mandamus.

{¶ 20} The request for a writ of mandamus against the attorney general is denied.

*F. Ohio-SAFE's request for an extension of time*

{¶ 21} Finally, Ohio-SAFE requests, as an equitable remedy, an extension of time in which to collect signatures equal to the delay caused by the board's improper action. We denied a similar request in *Ohio Liberty Council* for three reasons, one of which was that there was no urgency for the proposed amendment to appear on the next general-election ballot. *Id*., 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, at ¶ 64. The proposed amendment in that case was intended to stop the provisions of the federal Patient Protection and Affordable Care Act from taking effect in Ohio, but the federal law was not scheduled to take effect until

2014, so the amendment did not need to appear on the 2010 ballot. Likewise, by its own terms, the provisions in the Ohio-SAFE amendment that have specified effective dates are not scheduled to take effect until February 1, 2022, so the amendment could appear on ballots in 2021. As for the other provisions, Ohio-SAFE has not demonstrated any urgency to placing them on this November's ballot as opposed to a ballot in 2021.

{¶ 22} We therefore deny the request for additional time to gather signatures.

### III. Conclusion

{¶ 23} We grant a writ of mandamus directing the secretary of state to convene a meeting of the ballot board at the earliest possible date and we grant a writ of mandamus directing the ballot board to certify the Ohio-SAFE amendment as a single amendment. We deny mandamus relief against the attorney general and deny the request for additional time to gather signatures.

Writ granted in part

and denied in part.

O'CONNOR, C.J., and DONNELLY and STEWART, JJ., concur.

O'CONNOR, C.J., concurs, with an opinion joined by DONNELLY and STEWART, JJ.

KENNEDY, J., concurs in judgment only, with an opinion joined by FRENCH and DEWINE, JJ.

FISCHER, J., concurs in part and dissents in part, with an opinion.

_____

**O'CONNOR, C.J., concurring.**

{¶ 24} I agree with the per curiam opinion in its entirety. I write separately to explain why a writ of mandamus should be granted directing respondent the Ohio Ballot Board ("the board" or "the ballot board") to certify to respondent Attorney General Yost that the initiative petition seeking to place the "Secure and Fair

Elections Amendment" on the ballot contains only one proposed constitutional amendment. I also write separately to address why it is unnecessary to eradicate decades of this court's precedent to reach that result, as the opinion concurring in judgment only would have us do.

### The Right of the People to Amend the Constitution

{¶ 25} The per curiam opinion thoroughly explains the right of the people to propose amendments to the Constitution by initiative petition as it is set forth in Ohio Constitution, Article II, Section 1, as well as the process for proposing a constitutional amendment outlined in Chapters 3505 and 3519 of the Ohio Revised Code. Significant to the issues raised herein, an initiative petition shall only contain one proposal of law or constitutional amendment to enable the voters to vote on that proposal separately. R.C. 3519.01(A), paragraph one.

{¶ 26} Upon receipt of an initiative petition from the attorney general, the board's sole purpose in examining an initiative petition is "to determine whether it contains only one proposed * * * constitutional amendment so as to enable the voters to vote on a proposal separately." R.C. 3505.062(A).

### The Separate-Vote Requirement

{¶ 27} Seemingly erasing decades of precedent and statutory provisions, the opinion concurring in judgment only expounds that there is no " 'single-subject rule' that limits the people to proposing a constitutional amendment with only one subject, purpose, or objective," opinion concurring in judgment only at ¶ 75. In the view of the opinion concurring in judgment only, the separate-vote requirement applies only when the *General Assembly* proposes a constitutional amendment, not when the *people* propose an amendment.

{¶ 28} Following this line of misinterpretation, theoretically, the General Assembly is restricted to one subject, purpose, or objective while the people enjoy no such restriction and could propose a constitutional amendment containing any number (10, 20, or more) of subjects, purposes, or objectives. This leads me to

10

question why the General Assembly—the direct representative of the people—would be limited to one subject per amendment but the people would not? One would question how this distinction upholds the purpose attributed to the one-subject-per-amendment rule, i.e.,

> "to prevent imposition upon or deceit of the public by the presentation of a proposal which is misleading or the effect of which is concealed or not readily understandable * * * to afford the voters freedom of choice and prevent 'logrolling' or the combining of unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts."

*State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 28, quoting *Fugina v. Donavan*, 259 Minn. 35, 38, 104 N.W.2d 911 (1960).

{¶ 29} As I describe below, this court has already explained why that is not the law in Ohio, and that explanation is based on sound constitutional interpretation.

{¶ 30} Despite recognizing that Article XVI, Section 1 imposes a requirement that multiple constitutional amendments proposed by the General Assembly be submitted to the voters separately, the opinion concurring in judgment only then reviews several of our decisions concerning amendments submitted by the General Assembly and inexplicably concludes that "this history shows, over the past several decades this court has both recognized that the Ohio Constitution *does not* restrict an amendment to the Constitution to a single subject, purpose, or object and also asserted that an amendment's provisions *must* share a common subject, purpose, or object—sometimes in the same opinion." (Emphasis sic.) Opinion concurring in judgment only at ¶ 87. This conclusion does not fairly summarize this court's precedent.

**{¶ 31}** Contrary to the view of the opinion concurring in judgment only, this court has been consistent in recognizing that an amendment to the Constitution proposed by the General Assembly is restricted to a single subject, purpose, or object. *See State ex rel. Burton v. Greater Portsmouth Growth Corp.*, 7 Ohio St.2d 34, 36, 218 N.E.2d 446 (1966) (Article XVI, Section 1 is "directed to those instances where two or more different objects are sought to be accomplished in a single proposal. The singleness of purpose or object sought to be accomplished by the amendment is the test as to whether it complies with such section"); *State ex rel. Roahrig v. Brown*, 30 Ohio St.2d 82, 84, 282 N.E.2d 584 (1972) (Under Article XVI, Section 1 "a proposal consists of one amendment to the Constitution only so long as each of its subjects bears some reasonable relationship to a single *general* object or purpose" [emphasis added]); *Willke*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, at ¶ 28 (one objective of the " 'constitutional mandate that multifarious amendments shall be submitted separately' " " 'is to prevent * * * the combining of unrelated proposals in order to secure [their] approval' " [quoting *Fugina*, 259 Minn. at 38, 104 N.W.2d 911]).

**{¶ 32}** Only one case could be said to deviate from this well-established principle. In *State ex rel. Foreman v. Brown*, 10 Ohio St.2d 139, 144-145, 226 N.E.2d 116 (1967), the court found that "[t]here is nothing in the Ohio Constitution that will support a reasonable conclusion that a single amendment to that Constitution proposed by the General Assembly can involve no more than one subject, purpose or object." At best, *Foreman* is an outlier and has not, in the 53 years since its publication, been relied on for the proposition that amendments are not restricted to a single subject. And given that the opinion concurring in judgment only acknowledges that the Constitution imposes a separate-vote requirement on amendments proposed by the General Assembly, any reliance on *Foreman* is misguided.

12

{¶ 33} The question then turns to whether the separate-vote requirement imposed on the General Assembly also applies to amendments proposed by the people. This court resolved this question in *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, wherein we analogized Article XVI, Section 1's separate-vote requirement on amendments proposed by the General Assembly to the requirement in R.C. 3519.01(A) applicable to a citizen-initiated proposed constitutional amendment. The opinion concurring in judgment only proposes that we overrule *Ohio Liberty Council*, disregards R.C. 3519.01(A), and seeks to throw over 50 years of our caselaw into chaos and confusion—all in a matter in which no party cites a need for clarification or change in Ohio law.

{¶ 34} *Ohio Liberty Council* concerned an initiative petition by a citizen group to amend the Ohio Constitution to preserve Ohioans' freedom to choose their health care and health-care coverage. *Ohio Liberty Council* at ¶ 3. The ballot board found that the initiative petition contained two separate issues and certified the original petition to the attorney general as two proposed constitutional amendments. *Id.* at ¶ 19.

{¶ 35} In that opinion, we recognized the people's right to propose amendments to the Constitution in Article II, Section 1 and the separate-vote requirement imposed on the General Assembly's right to propose constitutional amendments in Article XVI, Section 1. And we concluded that "R.C. 3519.01(A) imposes a similar requirement on citizen-initiated proposed constitutional amendments." *Id.* at ¶ 34. We emphasized that the statute requires that

*[o]nly one proposal of law or constitutional amendment to be proposed by initiative petition shall be contained in an initiative petition to enable the voters to vote on that proposal separately.* A petition shall include the text of any existing statute or constitutional

provision that would be amended or repealed if the proposed law or constitutional amendment is adopted.

(Emphasis added in *Ohio Liberty* Council.) *Id.* at ¶ 35, quoting R.C. 3519.01(A).

{¶ 36} And we noted that "R.C. 3505.062, in turn, specifies the duty of the ballot board to determine whether an initiative petition contains only one proposed * * * constitutional amendment." *Id.* at ¶ 37. Because the separate-vote requirement and the separate-petition requirement are clearly comparable, we applied our Article XVI, Section 1 precedent and concluded that the proposal consisted of one amendment because all the sections bore some reasonable relationship to the single general purpose of preserving Ohioans' freedom to choose their health care and health-care coverage. *Ohio Liberty Council* at ¶ 43. By dividing the petition into two amendments, the ballot board abused its discretion and clearly disregarded the law. *Id.* at ¶ 45.

{¶ 37} *Ohio Liberty Council* was soundly decided based on well-established Ohio law and did not add any limitations, "by judicial fiat," on the rights of Ohioans to propose a constitutional amendment, as the opinion concurring in judgment only denunciates. Opinion concurring in judgment only at ¶ 97. To the contrary, the decision favored, and in no way limited, the people's proposed amendment in that case. As we cautioned:

> The power of initiative must be liberally construed, and the General Assembly cannot diminish that power. *State ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 4, 591 N.E.2d 1186 (1992). By imposing the separate-vote requirement on citizen-initiated proposed amendments, therefore, the General Assembly could not diminish citizens' constitutional right of initiative by construing that

14

requirement more strictly than the similar constitutional requirement applicable to the legislative right of initiative.

*Id.* at ¶ 56.

{¶ 38} As a final point, the opinion concurring in judgment only inexplicably concludes that "the separate-vote requirement of Article XVI, Section 1 does not apply to an amendment to the constitution initiated by the people" because amendments by the people "may be submitted on one petition and * * * each amendment is a separate ballot issue," opinion concurring in judgment only at ¶ 90. But this language from Article II, Section 1g demonstrates the opposite of the conclusion of the opinion concurring in judgment only. That provision states:

> The ballot language shall be prescribed by the Ohio ballot board in the same manner, *and subject to the same terms and conditions,* as apply to issues submitted by the general assembly pursuant to Section 1 of Article XVI of this constitution. *The ballot language shall be so prescribed* and the secretary of state shall cause the ballots so to be printed *as to permit an affirmative or negative vote upon each* law, section of law, or item in a law appropriating money, or proposed law, or *proposed amendment to the constitution.*

(Emphasis added.)

{¶ 39} In resolving what it recognizes is the key question in this case—what constitutes an amendment—the opinion concurring in judgment only curiously introduces definitions of the word and concludes that the constitution does not really say what it says about citizen amendments.

{¶ 40} In the course of attempting to disrupt decades of consistent precedent—which no party has challenged or sought clarification of—the opinion concurring in judgment only does an injustice to the parties and the public.

**Application to the Ohio-SAFE Amendment**

{¶ 41} Applying decades of precedent as outlined above, I would hold that the provisions of the Ohio-SAFE amendment all relate in some fashion to voting. The underlying premise appears to be that, if more eligible voters register to vote and cast ballots, and if the results of elections are accurate, then the outcome of elections will more accurately reflect the will of eligible voters. The petition therefore seeks to ensure that the outcome of elections accurately reflects the will of the population eligible to vote by amending Article V, Section 1 of the Ohio Constitution to make it easier for eligible voters to register to vote and cast a ballot and to require election results to be audited to ensure their accuracy.

{¶ 42} The proposed amendment would simplify the process of *registering* to vote: registration would be automatic upon renewal of a driver's license, eligibility requirements would be reduced by eliminating the 30-day-registration limitation on voting, and same-day registration would be become possible. And likewise, the amendment would change the *process* of voting in ways intended to ensure ballot access: a constitutional guarantee of absentee ballots for military and overseas voters, expanded early-voting periods, and guaranteed ballot access for disabled voters. And finally, the provision mandating postelection audits "to ensure the accuracy and integrity of elections" relates to this core purpose because it serves as a means to check whether individuals who benefit from the other provisions of the amendment by registering to vote and casting ballots actually have those ballots counted for the purpose of determining the outcome of the election.

{¶ 43} The board contends that the Ohio-SAFE amendment has *no* central purpose and that even if it does, the various provisions are not reasonably related to that purpose. Although not typically treated separately, these issues are

16

analytically distinct: (1) whether a proposed amendment has a single unifying purpose and (2) whether each provision of the amendment relates to or serves that purpose.

{¶ 44} We have "generally taken a 'liberal [view] in interpreting what such a single general purpose or object may be.' " (Brackets added in *Ohio Liberty Council*.) *Ohio Liberty Council*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, at ¶ 42, quoting *Foreman*, 10 Ohio St.2d at 146, 226 N.E.2d 116. In *Willke*, for example, we considered a proposed constitutional amendment to

> "permit the issuance of general obligation bonds to create and preserve jobs, enhance employment and educational opportunities, and promote economic growth through funding local government public infrastructure capital improvements, research and development, and the development of certain sites and facilities, and to expand state and local government authority regarding economic development."

*Willke*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, at ¶ 2, quoting Am.Sub.H.J.R. 2. Despite the fact that the amendment addressed multiple topics, we declined to issue a writ of mandamus to keep it off the ballot.

> After applying this deferential test to H.J.R. 2, we find that although the issuance of state bonds for the public-works, Third Frontier, and business-facilities projects may represent different components, they are all reasonably related to the single general purpose of job creation or economic development in Ohio. The General Assembly's combination of these three programs in one amendment—although seemingly the product of a tactical

decision—is not so incongruous that it could not, by any reasonable interpretation, be considered germane to the purposes of statewide job creation and economic development.

*Id*. at ¶ 38.

{¶ 45} In other decisions, we have recognized similarly broad, single purposes unifying disparate provisions in proposed constitutional amendments, such as "allow[ing] the state and governmental subdivisions to give financial assistance to private industry or to other governmental units in order to create new employment within this state," *Burton*, 7 Ohio St.2d at 36-37, 218 N.E.2d 446, and "preserving Ohioans' freedom to choose their health care and health-care coverage as it existed on March 19, 2010, with certain exceptions, before the enactment of the [(federal)] Patient Protection and Affordable Care Act," *Ohio Liberty Council* at ¶ 43. "Voting" as a category is no more vague or overbroad than "job creation" or "economic development."

{¶ 46} The board purports to be unable to figure out what the unifying purpose of the proposed amendment could possibly be, because the Ohio-SAFE amendment does not explicitly state its alleged unifying purpose. And in the absence of such a statement in the amendment itself, the board contends, "[o]nly [relators] know the true purpose in proposing it." But the board cites no statutory or common-law requirement that a proposed constitutional amendment must *state* its central purpose in order to have one.

{¶ 47} To the contrary, our pronouncement in *Willke* and elsewhere that courts will take a liberal view in *interpreting* what such a single general purpose or object may be, *id.*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, at ¶ 34, supports the conclusion that the general purpose is to be deduced from the various provisions of the amendment. In *Ohio Liberty Council*, for example, we relied on

the substance of the proposed amendment to deduce the overarching purpose. *Ohio Liberty Council*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, at ¶ 43.

{¶ 48} The Ohio-SAFE amendment has a title that suggests its intended purpose. In her remarks to the board, counsel for the Ohio Republican Party suggested that the title of the Ohio-SAFE amendment itself encompassed multiple subjects, because "secure" elections and "fair" elections are two separate topics. But that argument underscores the conceptual problem with the board's position: *every* proposed amendment that exceeds one sentence could theoretically be subdivided into multiple amendments. For this reason, the board is supposed to "liberally" construe the amendment in favor of finding a single purpose. *See id.* at ¶ 57.

{¶ 49} The related question, and the heart of this case, is whether each of the provisions of the Ohio-SAFE amendment is sufficiently related to that common purpose. As discussed, the test is whether the various provisions all relate to, and are incidental to and reasonably necessary to effectuate, *the common purpose*. This is not the test the speaker who opposed the measure urged the ballot board to apply. Rather, she informed the board that each provision had to be reasonably necessary to effectuate *the other provisions*:

> And if you look at No. 2 and compare it to No. 1, you'll see that the method by which a citizen is automatically registered to vote is not reasonably related or incidental to UOCAVA voters' rights to an absentee ballot. They're separate and distinct.
>
> * * *
>
> Again, when you compare [Section 3] to the other sections, you see that the subject of this proposal is not reasonably related or incidental to UOCAVA voters' rights to an absentee ballot [or to]

the method by which a citizen is auto—or the method by which a citizen is automatically registered to vote.

Relying upon these representations when it voted to divide the Ohio-SAFE amendment, the board acted contrary to clearly established law.

{¶ 50} The board's merit brief argues that "if [Ohio-SAFE's] purpose [was] to propose an Amendment that relates only to voting, it should not have included provisions that govern registering to vote." This argument treats "voting" and "registration" as unrelated topics. But registering to vote and casting a ballot are both plainly related to the overarching concept of "voting." Furthermore, if the central purpose is to increase ballot access for Ohio voters, the processes of registering to vote and casting a ballot clearly both relate to that central purpose.

{¶ 51} The ballot board need not *always* defer to the drafters of an amendment. We held that a proposed amendment should have been divided in *Roahrig*, 30 Ohio St.2d 82, 282 N.E.2d 584. In *Roahrig*, the proposed amendment would have revised a number of constitutional provisions relating to the administration, organization, expenses, and procedures of the General Assembly, with the general purpose, according to the amendment's proponents, of providing a strong, independent General Assembly. *Id*. at 84. We accepted that general statement of purpose but held that at least three parts of the amendment bore no reasonable relationship to that purpose: the proposal to require the governor and lieutenant governor to run for office together as a team, the proposal to repeal a constitutional provision concerning the Supreme Court Commission, and a provision repealing a section of the Constitution that prohibited certain persons from holding public office. *Id*. at 84-85. The discontinuity of those provisions stands in sharp contrast to the terms of the Ohio-SAFE amendment.

{¶ 52} Two themes run through the board's merit brief, both suggesting that the board protected Ohio voters by dividing the Ohio-SAFE amendment into four

separate ballot measures. First, the board says Ohio-SAFE's right of initiative is not the only constitutional value at stake; the *voters* have a countervailing right to vote on proposed constitutional amendments separately. The board correctly notes that and as discussed above, the separate-vote requirement has

> "two great objectives. The first is to prevent imposition upon or deceit of the public by the presentation of a proposal which is misleading or the effect of which is concealed or not readily understandable. The second is to afford the voters freedom of choice and prevent 'logrolling' or the combining of unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts."

*Ohio Liberty Council*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, at ¶ 52, quoting *Fugina*, 259 Minn. at 38, 104 N.W.2d 911. But the board provides no reason to believe the amendment as written will actually confuse voters, nor has it suggested any way in which the amendment reflects the practice of logrolling. *See id.* at ¶ 53 (rejecting board's division of an amendment because the inclusion of the sections at issue "does not render the amendment as a whole deceptive or constitute the attachment of an unrelated, unpopular proposal").

{¶ 53} Second, the board's brief suggests that Ohio-SAFE failed to meet its burden of proof to show that the various provisions all relate to a single general purpose. According to the board, this case presents legal questions of first impression, such as who bears the burden of proof in a one-subject dispute and whether the question should be subject to some sort of burden-shifting analysis. But these questions of proof are inapplicable. The board does not hear and weigh evidence when it conducts its meetings. The two people who spoke at the ballot-

board meeting were not witnesses; they were not under oath and did not present testimony. They were attorneys making arguments and answering questions. Rather, the only question before the board was whether there was a reasonable relationship between the various provisions of the proposed amendment and its central purpose, and that could be determined from the face of the document.

{¶ 54} *Ohio Liberty Council* instructs a board to make all reasonable interpretations in favor of submitting a proposed amendment undivided. The ballot board failed to comply with that duty when it separated the Ohio-SAFE amendment into four separate ballot measures. For these reasons, I would grant a writ of mandamus directing the board to certify the amendment as drafted.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 55} In this expedited election case, relators, Ohioans for Secure and Fair Elections and the individual petition-committee members (collectively, "Ohio-SAFE") seek separate writs of mandamus against respondents, Secretary of State Frank LaRose, the Ohio Ballot Board, and Attorney General Dave Yost, as well as an order extending the July 1, 2020 deadline for submitting petition signatures to the secretary of state to qualify for the November 2020 ballot. Although Ohio-SAFE prays for various forms of relief, the core question in this case is whether the ballot board abused its discretion by dividing Ohio-SAFE's proposed constitutional amendment into four separate amendments thereby requiring the submission of four separate initiative petitions.

{¶ 56} For the reasons that follow, I would hold that Ohio-SAFE is entitled to writs of mandamus (1) compelling Secretary of State Frank LaRose to convene a meeting of the Ohio Ballot Board and (2) directing the ballot board to certify to Attorney General Dave Yost that the initiative petition seeking to place the "Secure and Fair Elections Amendment" on the ballot contains only one proposed

constitutional amendment. I would also hold that Ohio-SAFE is not entitled to a writ ordering the attorney general to file a verified copy of the proposed amendment and its summary with the secretary of state or to an order extending the July 1, 2020 deadline for submitting petition signatures to the secretary of state to qualify for the November 2020 ballot.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 57} On February 10, 2020, Ohio-SAFE submitted to Attorney General Yost an initiative petition and summary proposing the "Secure and Fair Elections Amendment," which would amend Article V, Section 1 of the Ohio Constitution. That section provides, in its entirety:

> Every citizen of the United States, of the age of eighteen years, who has been a resident of the state, county, township, or ward, such time as may be provided by law, and has been registered to vote for thirty days, has the qualifications of an elector, and is entitled to vote at all elections. Any elector who fails to vote in at least one election during any period of four consecutive years shall cease to be an elector unless he again registers to vote.

{¶ 58} The proposed amendment would eliminate the 30-day registration requirement to be eligible to vote. In addition, the proposed amendment would guarantee the following rights to every U.S. citizen who is—or is eligible to become—an elector in Ohio:

(1) If serving in the military or residing outside the United States, the right to have an absentee ballot sent, upon application, beginning 46 days before an election.

(2) The right to be registered to vote upon applying for, renewing, updating, or replacing an Ohio driver's license, learner's permit, or state-issued

identification card, unless the citizen declines in writing to be registered to vote.

(3)   The right to obtain and cast a ballot on weekdays during an early-voting period, to begin 28 days before an election (excepting state holidays) and include at least 12 hours of in-person early voting per weekend for the two weekends immediately preceding a general election.

(4)   The right to register and immediately vote, during either early or election-day voting, upon proof of residency.

(5)   The right of persons with disabilities to have full and equal access to register to vote and to vote.

The proposed amendment would also require a "representative sample of statewide elections to be audited to ensure the accuracy and integrity of elections." The amendment provides that items 2 and 4 above will take effect on February 1, 2022.

{¶ 59} On February 20, 2020, Attorney General Yost certified that the summary was a fair and truthful statement of the proposed constitutional amendment. He then forwarded the petition to the ballot board.

{¶ 60} The ballot board consists of the secretary of state, who serves as chairperson, and four appointed members, no more than two of whom may be of the same political party. R.C. 3505.061(A) and (D). On March 2, 2020, the ballot board met to determine whether the petition "contains only one proposed * * * constitutional amendment so as to enable the voters to vote on a proposal separately," as required by R.C. 3505.062(A). Counsel for Ohio-SAFE addressed the board and explained that the various provisions of the Ohio-SAFE amendment have "a common purpose or common subject. The common purpose or subject is voting or voting and registration. Everything in the proposal today relates in some way to voting." Speaking in opposition, an attorney for the Ohio Republican Party argued that the proposed amendment "comprised * * * several discrete amendments, most of which should be voted on on a separate proposal, because

24

there is not a sufficiently singular purpose to present all of these proposals to voters in a single ballot initiative."

{¶ 61} Following these presentations, the ballot board found that the Ohio-SAFE amendment contained four separate proposals: (1) "a constitutional right to requirements regarding casting ballots," (2) "a constitutional right regarding the manner in which one becomes a registered voter and when any registration is effective," (3) "a constitutional right for citizens with disabilities to register to vote and vote," and (4) "postelection audits."

{¶ 62} The ballot board then exercised its statutory authority to "divide the initiative petition into individual petitions containing only one proposed * * * constitutional amendment so as to enable the voters to vote on each proposal separately." R.C. 3505.062(A), paragraph two. Following the ballot board's action, Ohio-SAFE must submit separate summaries for each proposal to the attorney general for approval before it may begin circulating petitions. R.C. 3519.01(A); R.C. 3505.062(A).

{¶ 63} To qualify for the November general-election ballot, Ohio-SAFE must file its petition with the secretary of state no later than 125 days before the general election, which is July 1, 2020. Ohio Constitution, Article II, Section 1a. The petition must contain valid signatures from at least 44 of Ohio's 88 counties, in an amount equal to at least five percent of the total votes cast in the last gubernatorial election in those 44 counties. *See id.*, Sections 1a, 1g. The signatures collected statewide must equal at least ten percent of the total votes cast for governor in the last gubernatorial election. *Id.*, Section 1a; *see id.*, Section 1g.

{¶ 64} Ohio-SAFE filed a complaint for writs of mandamus in this court on March 5, 2020. The complaint asks for three separate writs of mandamus. First, it seeks to compel the board to certify to the attorney general that the Ohio-SAFE petition contains only one proposed constitutional amendment. Second, to facilitate that process, the complaint requests a writ of mandamus compelling the secretary

of state to convene a meeting of the board. Third, in the alternative, the complaint asks for a writ ordering the attorney general to file a verified copy of the proposed amendment, as written, along with the certified summary, with the secretary of state (essentially cutting the board out of the process).

{¶ 65} We granted Ohio-SAFE's motion for an expedited briefing schedule.

## II. THE MANDAMUS CLAIM AGAINST THE BALLOT BOARD

### A. Standard of review

{¶ 66} To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 22. Ohio-SAFE does not have an adequate remedy because there is no statutory right to appeal from a decision of the ballot board. *See* R.C. 3505.062. For the remaining requirements of clear legal right and clear legal duty, in the absence of any evidence of fraud or corruption, the dispositive issue is whether the ballot board abused its discretion or clearly disregarded applicable law in dividing the proposed constitutional amendment into four proposals. *Voters First* at ¶ 23.

### Positions of the parties

{¶ 67} Ohio-SAFE relies on this court's decision in *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, to argue that "the standard for determining whether an amendment proposed by initiative petition under Article II, Section 1 of the Ohio Constitution" meets the separate-petition requirement of R.C. 3519.01(A) "derives from the Court's precedent construing the 'separate-vote' requirement for amendments proposed by the General Assembly" that is found in Article XVI, Section 1 of the Ohio Constitution. Ohio-SAFE points out that the separate-vote requirement is similar to the "single-subject" rule imposed by Article II, Section 15(D) on bills enacted

26

by the General Assembly, and it relies on our decision in *State ex rel. Willke v. Taft* as establishing the test for when an amendment initiated by the people has a single subject: " 'a proposal consists of one amendment to the Constitution only so long as each of its subjects bears some reasonable relationship to a single *general* object or purpose.' " (Emphasis sic.) 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 34, quoting *State ex rel. Roahrig v. Brown*, 30 Ohio St.2d 82, 84, 282 N.E.2d 584 (1972). According to Ohio-SAFE, *Ohio Liberty Council* is the controlling precedent and requires the ballot board to certify that the Secure and Fair Elections Amendment contains only one subject.

{¶ 68} The secretary of state and the ballot board agree that *Ohio Liberty Council* is the controlling precedent and that the people may not propose a constitutional amendment if it contains more than a single subject. They maintain that the people's right to initiate an amendment has the same limits as the General Assembly's authority to propose a constitutional amendment under Article XVI, Section 1 of the Ohio Constitution. The secretary of state and the ballot board assert that R.C. 3505.062(A) authorizes the ballot board to divide an initiative petition presented by the people if the proposed constitutional amendment contains multiple subjects that do not bear some reasonable relationship to a single general object or purpose. And here, they argue that the Secure and Fair Elections Amendment relates to multiple purposes and that the ballot board therefore did not abuse its discretion by dividing it into separate proposals.

{¶ 69} Before addressing these positions, it is important to point out what this case is not about. This case is not about the wisdom of adopting the proposed Secure and Fair Elections Amendment or whether matters that have traditionally been governed by statute should form the basis of an amendment to the Constitution; those decisions are best left to the sound discretion of Ohioans. *See State ex rel. Hubbell v. Bettman*, 124 Ohio St. 24, 27, 176 N.E. 664 (1931). This case is also not about addressing any constitutional issue regarding the statutory

scheme that governs the amendment of the Constitution or any individual part of that scheme. All those questions remain for another day.

{¶ 70} Instead, this case asks us to determine whether the ballot board abused its discretion, thereby entitling Ohio-SAFE to an extraordinary writ of mandamus establishing that the Secure and Fair Elections Amendment is a single constitutional amendment that may be proposed to the people in a single initiative petition. To answer that question, I begin with the text of the Ohio Constitution.

## C. Law and analysis

### 1. The people's right to amend the Ohio Constitution

{¶ 71} Our Constitution is founded on the fundamental principle that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary." Article I, Section 2, Ohio Constitution.

{¶ 72} When the people ratified the Ohio Constitution, they reserved in Article II, Section 1 the power of the people to propose an amendment to the Constitution by initiative petition. Article II, Section 1a provides,

> When a petition signed by [10 percent] of electors, shall have been filed with the secretary of state, and verified as herein provided, proposing an amendment to the constitution, the full text of which shall have been set forth in such petition, the secretary of state shall submit for the approval or rejection of the electors, the proposed amendment, in the manner hereinafter provided, at the next succeeding regular or general election in any year occurring subsequent to one hundred twenty-five days after the filing of such petition.

{¶ 73} The general requirements and procedures that apply to all initiative and referendum petitions on statewide issues are established by Article II, Section 1g of the Ohio Constitution. It states that its provisions "shall be self-executing, except as herein otherwise provided" and that "[l]aws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved." Once sufficient signatures have been collected and verified, Section 1g mandates that the secretary of state place the proposed amendment to the Constitution on the ballot, with the ballot language to be "prescribed by the Ohio ballot board in the same manner, and subject to the same terms and conditions, as apply to issues submitted by the general assembly pursuant to Section 1 of Article XVI of this constitution."

{¶ 74} Article XVI, Section 1 states that ballot language must "properly identify the substance of the proposal to be voted upon" but it "need not contain the full text nor a condensed text of the proposal." It also directs the ballot board to prepare an explanation of the proposed amendment and to certify the ballot language and the explanation to the secretary of state. Article XVI, Section 1, Ohio Constitution. The ballot board also may prepare arguments for and against the proposal. *Id*. The extent of the ballot board's constitutional authority in the initiative-petition process is therefore to prescribe the ballot language, prepare an explanation, and certify both to the secretary of state.

{¶ 75} R.C. 3505.062 provides that if the ballot board determines that an initiative petition contains more than one proposed constitutional amendment, then the board shall "divide the initiative petition into individual petitions containing only one proposed * * * constitutional amendment so as to enable the voters to vote on each proposal separately." The ballot board found that the Secure and Fair Elections Amendment included four separate proposals or subjects, and it required the proposal to be divided and circulated as four amendments on four separate petitions. However, as I will explain more fully below, the Constitution does not

establish a "single-subject rule" that limits the people to proposing a constitutional amendment with only one subject, purpose, or objective. The single-subject requirement that this court applied in *Ohio Liberty Council*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, originated in cases interpreting a separate provision of the Ohio Constitution: the separate-vote requirement of Article XVI, Section 1. An analysis of these cases is necessary to determine whether we have properly overlaid caselaw interpreting the General Assembly's authority to propose a constitutional amendment onto the people's right to do the same.

## 2. The separate-vote requirement

{¶ 76} The 1851 Constitution provided that the General Assembly, by three-fifths vote of each house, could submit proposed amendments for a vote. Article XVI, Section 1, Ohio Constitution of 1851. Recognizing that the legislature could propose multiple amendments at one time, former Article XVI, Section 1 provided that "[w]hen more than one amendment shall be submitted at the same time, they shall be so submitted, as to enable the electors to vote on each amendment, separately." The 1912 Constitution retained this language but amended it slightly to remove the comma after the word "submitted" and add a comma before the word "separately." It also reserved the power to the people to initiate an amendment to the Constitution in Article II, Sections 1a and 1g. But these provisions, unlike Article XVI, Section 1, did not include express "separate-vote" language for a constitutional amendment proposed by the people.

{¶ 77} We have attempted to determine what the separate-vote requirement means in a series of cases reviewing amendments to the Constitution proposed by the General Assembly under the authority of Article XVI, Section 1.

{¶ 78} In *State ex rel. Burton v. Greater Portsmouth Growth Corp.*, we stated that Article XVI, Section 1 "is directed to those instances where two or more different objects are sought to be accomplished in a single proposal. The singleness of purpose or object sought to be accomplished by the amendment is the test as to

whether it complies with such section." 7 Ohio St.2d 34, 36, 218 N.E.2d 446 (1966).

{¶ 79} One year later, we rejected this statement as dicta in *State ex rel. Foreman v. Brown*, stating that it was "unnecessary for us to determine in that case whether Section 1 of Article XVI prohibited submission of a constitutional amendment as one amendment, if it involved more than one subject, purpose or object." 10 Ohio St.2d 139, 144, 226 N.E.2d 116 (1967). We then explained that "[t]here is nothing in the Ohio Constitution that will support a reasonable conclusion that a single amendment to that Constitution proposed by the General Assembly can involve no more than one subject, purpose or object." *Id.* at 144-145. We pointed out that "if those who submitted Section 1 of Article XVI had intended that each amendment to the Constitution proposed by the General Assembly be confined to one subject, object or purpose, they would have so provided as they did in Section 16 of Article II [(the single-subject rule for statutes)]. They did not." *Id*. at 145. The court in *Foreman*, in dicta, noted that other states had generally required amendments with multiple subjects to relate to a single general object or purpose, but it acknowledged that the proposed amendment would pass scrutiny under that standard. *Id*. at 145-146.

{¶ 80} In *State ex rel. Roahrig v. Brown*, this court, without analysis, relied on *Burton* and *Foreman* for the proposition that "[u]nder this constitutional provision [(Article XVI, Section 1)] a proposal consists of one amendment to the Constitution only so long as each of its subjects bears some reasonable relationship to a single general object or purpose." 30 Ohio St.2d 82, 84, 282 N.E.2d 584 (1972). In that case, an amendment had been proposed by a joint resolution of the General Assembly and included changes related to the election of the governor and lieutenant governor, the disqualification of certain felony offenders from holding public office, and the repeal of a constitutional provision providing for the Supreme Court Commission. We stated that "Section 1, Article XVI of the Constitution is

clear and unequivocal in its admonition that only a single general purpose may be included in any one proposed constitutional amendment," and we concluded that the three proposals lacked any reasonable relationship to the stated general purpose of the amendment and therefore had to be separately submitted to electors. *Id*. at 85.

{¶ 81} Our decision in *State ex rel. Willke v. Taft* involved the question whether a constitutional amendment proposed by the General Assembly violated the separate-vote requirement of Article XVI, Section 1 of the Ohio Constitution. 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536. Quoting cases from Maryland and Minnesota, we explained that the separate-vote requirement was designed to prevent voter confusion on the matter submitted while preventing "logrolling," which is the combination of unrelated proposals in order to gather sufficient votes to pass otherwise unfavorable provisions. *Id*. at ¶ 27-28. We then explained that "[t]he separate-vote requirement of Section 1, Article XVI is comparable, but not identical, to the one-subject rule of Section 15(D), Article II." *Id*. at ¶ 29. Although we reiterated our holding in *Foreman* that nothing in the Ohio Constitution requires all parts of an amendment proposed by the General Assembly to share one subject, purpose, or object, *id*. at ¶ 30, we nonetheless followed *Roahrig*'s test, stating that " 'a proposal consists of one amendment to the Constitution only so long as each of its subjects bears some reasonable relationship to a single *general* object or purpose' " (emphasis sic), *id*. at ¶ 34, quoting *Roahrig*, 30 Ohio St.2d at 84, 282 N.E.2d 584. That is, we said that there is no single-subject rule for constitutional amendments right before we said that there was one.

{¶ 82} This review of our caselaw shows that our construction of the separate-vote requirement of Article XVI, Section 1 has been far from consistent, even within the same decision. But whether the Ohio Constitution's separate-vote requirement restricts the General Assembly to proposing constitutional amendments that relate to a single subject or underlying object or purpose is not

before us now. Instead, we are asked to decide whether the people's proposals to amend the Constitution are limited by a single-subject rule. Acknowledging that the political power of this state emanates from the people, I turn to that question.

### 3. *State ex rel. Ohio Liberty Council v. Brunner*

{¶ 83} The foregoing cases construed the express separate-vote requirement of Article XVI, Section 1, which provides the process for the General Assembly to propose a constitutional amendment by joint resolution. Then in *Ohio Liberty Council*, we applied that caselaw to an amendment to the Constitution initiated by the people. *See* 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410. The parties urge us to do so again today.

{¶ 84} In *Ohio Liberty Council*, this court quoted Article II, Section 1 of the Ohio Constitution, which states that "[t]he limitations expressed in the constitution, on the power of the general assembly to enact laws, shall be deemed limitations on the power of the people to enact laws," suggesting that this language somehow limits the power of the people to propose an amendment to the Constitution. However, it does not, and it was not relevant to the analysis in *Ohio Liberty Council*. This limiting language applies when the people enact a law through the right of initiative, not when they propose an amendment to the Constitution. Throughout Article II, the Constitution distinguishes between "laws" and "amendments." For example, Article II, Section 1a grants the people the power "to propose an amendment to the constitution," while Article II, Section 1b guarantees the right of the people to propose "a law."

{¶ 85} Article II, Section 1 simply provides that when the people enact a law through initiative, that law is subject to the same constitutional limitations that apply to a statute enacted by the General Assembly, such as the protections afforded by Ohio's Bill of Rights. It does not impose those limitations on the General Assembly's power onto the people's right to propose a constitutional amendment by initiative petition.

{¶ 86} This court in *Ohio Liberty Council* then compared the separate-vote requirement of Article XVI, Section 1 to the statutory separate-petition requirement of R.C. 3505.062, which requires the ballot board to review an amendment initiated by the people to ensure that each initiative petition contains only one proposed amendment. *Ohio Liberty Council*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, at ¶ 32-40. Concluding that "this separate-petition requirement is comparable to the separate-vote requirement for legislatively-initiated constitutional amendments under Section 1, Article XVI of the Ohio Constitution," *id.* at ¶ 41, we applied the *Roahrig* test to decide whether a separate petition is necessary under the statute, stating that " ' "a proposal consists of one amendment to the Constitution only so long as each of its subjects bears some reasonable relationship to a single *general* object or purpose." ' " (Emphasis sic.) *Ohio Liberty Council* at ¶ 42, quoting *Willke*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, at ¶ 34, quoting *Roahrig*, 30 Ohio St.2d at 84, 282 N.E.2d 584. In doing so, we layered language from the single-subject rule of Article II, Section 15(D) onto the separate-vote requirement of Article XVI, Section 1 and then used both to burden the people's right to propose amendments to the Constitution.

### 4. Resolving the conflicts in our caselaw

{¶ 87} As this history shows, over the past several decades this court has both recognized that the Ohio Constitution *does not* restrict an amendment to the Constitution to a single subject, purpose, or object and also asserted that an amendment's provisions *must* share a common subject, purpose, or object— sometimes in the same opinion. In doing so, we have taken precedent discussing a provision such as the single-subject rule in one case and overlaid it on other constitutional provisions and statutes in another case.

{¶ 88} The parties ask us to continue this trajectory today by treating the separate-vote requirement of Article XVI, Section 1 as if it applies to an initiative petition to amend the Constitution by the people and imposes a one-subject rule on

constitutional amendments proposed by the people. This position is understandable, given the confusion in our caselaw. However, our duty is to say what the law is, "[a]nd while briefing would be helpful, it is impractical or impossible here given the compressed time frame of an expedited election case. In these circumstances, our prudential policy against addressing arguments not raised by the parties is not a barrier to addressing and remedying a clear mistake before it is repeated again." *State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 1165, ¶ 14. The alternative is to recognize our mistake but stay silent, thereby allowing the ballot board to continue to limit the people's right to propose amendments to the Constitution based on our flawed analysis in *Ohio Liberty Council*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410. Further, stare decisis does not compel adherence to an incorrect interpretation of the Constitution; as we explained in *Rocky River v. State Emp. Relations Bd.*, "each judge remembers above all that she or he has sworn to support and defend the Constitution—not as someone else has interpreted it but as the judge deciding the case at bar interprets it." 43 Ohio St.3d 1, 6-7, 539 N.E.2d 103 (1989).

{¶ 89} Article XVI, Section 1 and Article II, Section 15(D) are express constitutional restrictions on the power of the General Assembly, unrelated to the reserved power of the people to initiate an amendment to the Constitution. Those provisions govern joint resolutions and statutes, not initiative petitions. The framers knew how to limit legislation to a single subject; Article II, Section 15(D) of the Ohio Constitution expressly states, "No bill shall contain more than one subject." But neither Article XVI, Section 1 nor Article II, Sections 1a or 1g expressly limit a proposed amendment to the Constitution to a single subject, purpose, or object. Requiring a *separate vote* on each amendment and limiting an amendment to a *single subject* are different things. The framers could have provided that no amendment shall contain more than one subject, but they did not, and we should not add words to the Constitution in the guise of interpreting it.

{¶ 90} And, there is a more basic reason why the separate-vote requirement of Article XVI, Section 1 does not apply to an amendment to the Constitution initiated by the people. Article II, Section 1g itself already provides that one amendment may be submitted on one petition and that each amendment is a separate ballot issue: "The ballot language shall be so prescribed and the secretary of state shall cause the ballots so to be printed as *to permit an affirmative or negative vote upon each* law, section of law, or item in a law appropriating money, or proposed law, or *proposed amendment to the constitution*." (Emphasis added.)

{¶ 91} In contrast, Article XVI, Section 1 contemplates that multiple amendments may be proposed in a single joint resolution of the General Assembly, and it requires a separate vote of the people in order to protect their freedom to decide which amendments to the Constitution should be adopted. That protection is not required when the people initiate a constitutional amendment, because only one amendment may be proposed in each initiative petition upon which the people will vote to ratify or reject.

{¶ 92} For these reasons, I categorically reject the conclusion reached in *Ohio Liberty Council* that each constitutional amendment proposed by the people is restricted to a single subject. Its holding limiting the power of the people to amend the Constitution finds no support in the language of Article II, Sections 1a or 1g and therefore should be overruled.

### 5. The meaning of the word "amendment"

{¶ 93} Clarifying these constitutional provisions brings into focus the crux of this case: what is the meaning of the word "amendment"?

{¶ 94} Although the word "amendment" has a usual and customary meaning, we nevertheless defined what an amendment means long ago in *State ex rel. Greenlund v. Fulton*, 99 Ohio St. 168, 124 N.E. 172 (1919). We explained that when used in connection with the Constitution, the word "amendment" has "a dual

meaning, the particular one to be determined by its relationship." *Id*. at 179. We continued:

> An amendment to the Constitution, which is made by the addition of a provision on a new and independent subject, is a complete thing in itself, and may be wholly disconnected with other provisions of the Constitution; such amendments, for instance, as the first ten amendments of the Constitution of the United States. * * *
>
> Then there is the use of the word "amendment" as related to some particular article or some section of the Constitution, and it is then used to indicate an addition to, the striking out, or some change in, that particular section.

*Id*. Simply put, an amendment is both the addition of a wholly new provision to the Constitution or the changes made to an existing article or section.

{¶ 95} Nothing in the *Greenlund* court's definition of the word "amendment" suggests that additions or changes made to an existing provision in the Constitution are required to have a single subject or unifying purpose or objective. Neither definition of "amendment" contemplates the idea of a single subject and the words "amendment" and "subject" are not synonymous—though the ballot board's actions suggest otherwise. Indeed, were we to apply the ballot board's understanding of "amendment" to the United States Constitution, a renumbering would be in order. The First Amendment alone contains at least four "subjects": free exercise and establishment of religion, freedom of speech and the press, the right to assemble, and the right to petition government.

{¶ 96} The common understanding of the word "amendment," then, is simply an addition or change, regardless of subject, and the Constitution does not impose any express limitations on the style or format in which the people must

express their fundamental rights. Rather, the people have the right to amend the Constitution largely without any state-law limitation on its subject matter. *But see* Article II, Section 1e, Ohio Constitution (limiting the right to use initiative to create nonuniform taxes, monopolies, oligopolies, or cartels). The people possess the power to amend the Constitution, and in ratifying Article II, Sections 1a and 1g, they did not limit that right to proposing only an amendment that addresses one subject, purpose, or object at a time.

{¶ 97} We cannot rewrite a provision of the Ohio Constitution to add such a limit by judicial fiat. Ultimately, the judgment over whether a proposed amendment should be adopted—and what the Constitution should say and how it should say it—rests within the sound discretion of the people of Ohio.

## 6. Application

{¶ 98} The Secure and Fair Elections Amendment seeks to amend an existing provision of the Ohio Constitution, Article V, Section 1, by deleting some language from and adding language to a single section. It is plainly an amendment within the meaning of Article II, Section 1g, and it may be circulated on a single petition form. A contrary holding would allow the ballot board, an entity that is not responsible to the people at the ballot box, to regulate the people's right to amend the Constitution by deciding how many words added or deleted are too many for the proposal to stand as a single amendment.

{¶ 99} The opinion concurring in part and dissenting in part protests that the decision to follow the plain language of the Constitution runs afoul of the doctrine of the separation of powers by impermissibly infringing on the prerogatives of the executive branch. Not true. To the contrary, our Constitution grants to the people the right to amend the Constitution—and nothing in that document permits the legislature, the executive, or the judiciary to interfere with the right of the people to shape and amend provisions of their Constitution. As members of the judiciary, it is our solemn duty to be guardians of the Constitution

and to protect and defend the right of the people to self-governance. Anything less and we would serve only as an underpinning to the other branches of government.

{¶ 100} Accordingly, the ballot board abused its discretion when it separated the Secure and Fair Elections Amendment into four separate ballot measures. I would grant a writ of mandamus directing the board to certify the amendment as drafted. The mandamus claim brought against the secretary of state to convene a meeting of the ballot board therefore has merit and should be granted, but the mandamus claim against the attorney general should be dismissed as it is moot.

### III. THE REQUEST FOR AN EXPANSION OF TIME

{¶ 101} The decision reached above does not mean that we should extend the deadline for submitting a sufficient number of signatures so that the Secure and Fair Elections Amendment may appear on the November 3, 2020 general-election ballot. Just as I am bound by the fact that the Ohio Constitution does not impose a single-subject requirement on the people's right to amend the Constitution, I am equally bound by the plain and unambiguous language of Article II, Section 1a that an initiative petition to amend the Constitution must be filed 125 days before the next regular or general election in order to appear on that ballot. While recognizing that we have extended constitutional time deadlines in cases such as *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, it is manifest that this case is distinguishable. In *LetOhioVote.org*, for example, the secretary of state's actions precluded the petitioners from obtaining the required number of signatures within the 90-day period allowed to collect them, and it would have denied the right of the people to referendum without an extension. *Id.* at ¶ 8, 54.

{¶ 102} But this is not a case in which government officials are thwarting the ability of the people to put an initiative to amend the Constitution on the ballot. Here, relators began the process to propose an amendment to the Constitution on

February 10, 2020, when they submitted their initial petition to the attorney general. They therefore share responsibility for the compressed time in which they may file a sufficient number of signatures in order for their proposed amendment to appear on the November 3, 2020 ballot. Further, their claim of prejudice fails. Although they assert that delaying a vote on the amendment until November 2021 "would convert the specified February 1, 2021 effective date [for two sections of the amendment] from a delayed effective date into a retroactive effective date," that assertion is wrong as a matter of fact. The petition attached to the complaint indicates that those sections would take effect on February 1, 2022. Equity therefore does not demand that we grant the requested order to extend the 125-day deadline to place the amendment on the November 3, 2020 general-election ballot.

### IV. CONCLUSION

{¶ 103} I am acutely aware of the potential implications of the conclusion I reach today. Nevertheless, I am compelled based on the plain and unambiguous language of the Constitution to set the matter straight and would strictly overrule *Ohio Liberty Council*. Therefore, Ohio-SAFE is entitled to writs of mandamus (1) compelling Secretary of State Frank LaRose to convene a meeting of the Ohio Ballot Board and (2) directing the ballot board to certify to Attorney General Dave Yost that the initiative petition seeking to place the "Secure and Fair Elections Amendment" on the ballot contains only one proposed constitutional amendment. However, Ohio-SAFE is not entitled to a writ ordering the attorney general to file a verified copy of the proposed amendment and its summary with the secretary of state or to an order extending the July 1, 2020 deadline for submitting petition signatures to the secretary of state to qualify for the November 2020 ballot.

{¶ 104} Accordingly, I concur in the court's judgment today but not in its reasoning.

FRENCH and DEWINE, JJ., concur in the foregoing opinion.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 105} Respectfully, I concur in the per curiam opinion's judgment denying mandamus relief against respondent Attorney General Dave Yost and also denying the request for an extension of time to collect the required signatures.

{¶ 106} Given the applicable law and standard of review, I disagree that relators, Ohioans for Secure and Fair Elections, Darlene L. English, Laura A. Gold, Hasan Kwame Jeffries, Isabel C. Robertson, and Ebony Speakes-Hall, are entitled to writs of mandamus against respondents Secretary of State Frank LaRose and the Ohio Ballot Board. Therefore, I respectfully dissent in part.

{¶ 107} The writ of mandamus is a form of extraordinary relief. To be entitled to a writ of mandamus, relators must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Fockler v. Husted*, 150 Ohio St.3d 422, 2017-Ohio-224, 82 N.E.3d 1135, ¶ 8.

{¶ 108} In actions challenging the decisions of the ballot board and secretary of state, "the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 30. " 'An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude.' " *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 12, quoting *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 80 Ohio St.3d 302, 305, 686 N.E.2d 238 (1997).

{¶ 109} The applicable provision here, R.C. 3505.062(A), states that the ballot board "shall" examine each written petition "to determine whether it contains only one proposed law or constitutional amendment so as to enable the voters to vote on a proposal separately." That statute further specifies what happens if the

board decides that a petition complies with this single-issue requirement and what happens if the board decides, on the other hand, that the petition before it does not. *Id*. When the board decides that the petition falls into the latter, noncompliant category, "the board *shall divide* the initiative petition into individual petitions containing only one proposed law or constitutional amendment * * *." (Emphasis added.) *Id.*

{¶ 110} By its text, R.C. 3505.062(A) grants the ballot board the discretion to determine whether an initiative petition contains more than one proposed law or constitutional amendment and mandates that the ballot board divide the petition if it makes such a finding. Thus, R.C. 3505.062(A) contemplates the result reached here.

{¶ 111} Accordingly, I find it very difficult to say that the ballot board abused its discretion or acted in clear disregard of applicable legal provisions. Under the statute, the ballot board simply decided that the initiative petition deals with more than one issue and voted to divide the petition. That decision was hardly arbitrary or unreasonable, especially considering that all of the opinions in this case at least tacitly acknowledge that there are anywhere from two to three distinct issues (voting, registration, and auditing) being dealt with by this particular petition. On the record before us then, relators, with whom the duty unequivocally resides, failed to demonstrate by *clear and convincing evidence* that they are entitled to the relief requested.

{¶ 112} Moreover, granting these writs is inappropriate from a separation-of-powers perspective. At its core, the separation-of-powers doctrine—which is implicitly embedded within the Ohio Constitution—establishes that " 'powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.' " *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753,

¶ 44, quoting *State ex rel. Bryant v. Akron Metro. Park Dist. of Summit Cty.*, 120 Ohio St. 464, 473, 166 N.E. 407 (1929). By granting these writs, the court is ignoring this fundamental rule and, in effect, actively controlling from the bench the actions of executive and administrative officers who, in discharging their duties, must necessarily exercise a degree of discretion. The writ of mandamus is an extraordinary remedy that was not meant for these circumstances, and the separation-of-powers doctrine calls on us to be mindful of this fact.

{¶ 113} Being mindful of this fact, of course, does not mean ignoring the Ohio Constitution. Instead, it simply requires acknowledging the limits of this extraordinary writ—a writ that surely should not issue just because this court disagrees with the ballot board's ultimate conclusion. *See, e.g.*, *State ex rel. Armstrong v. Davey*, 130 Ohio St. 160, 163-164, 198 N.E. 180 (1935).

{¶ 114} Finally, making matters worse, the opinion concurring in judgment only wades into a discussion regarding a constitutional issue (i.e., a perceived tension between this court's case law, the Ohio Constitution, and R.C. 3505.062) that was not addressed by any of the parties to this case and one that is obviously unnecessary to reach in order to resolve the narrow issue before this court—whether the writs should issue. On this, the superfluousness of this constitutional exegesis, I agree with the concurring opinion. As I have noted before, we generally should be hesitant to decide such issues of constitutional importance without the benefit of briefing or argument. *See State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 1165, ¶ 29 (Fischer, J., dissenting). After all, as then Judge Antonin Scalia once wrote, "courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983).

{¶ 115} For these reasons, in addition to denying the other relief requested, I would deny the writs against Secretary of State Frank LaRose and the Ohio Ballot

Board.  Because the per curiam opinion does not do so, I respectfully concur in part and dissent in part.

————————————

ACLU of Ohio Foundation, Freda J. Levenson, and David J. Carey; American Civil Liberties Union, Dale Ho, and Alora Thomas-Lundborg; McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for relators.

Dave Yost, Ohio Attorney General, and Bridget C. Coontz and Brandi Laser Seskes, Assistant Attorneys General, for respondents.

————————————